**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN SIMKUS, on behalf of himself and the classes defined herein, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  11-cv-7425 |
| v. | ) ) | Judge Marvin E. Aspen |
| CAVALRY PORTFOLIO SERVICES, LLC; and CAVALRY INVESTMENTS, LLC, | ) ) ) | Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants, CAVALRY PORTFOLIO SERVICES, LLC and CAVALRY INVESTMENTS, LLC (collectively, "CPS"), by their attorneys, Anna-Katrina S. Christakis and Raechelle Delarmente Norman, Grady Pilgrim Christakis Bell LLP, *of counsel*, move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff's three-count putative class action complaint arises out of CPS's collection of an alleged personal credit card account previously owned by Bank of America ("BOA"). Plaintiff does *not* contend that he did not incur the credit card debt; that he was not in default on the account; that his credit card agreement waived the accrual of interest post charge-off; that interest was miscomputed; that he was issued a faulty Form 1099-C; or that CPS, as an assignee, is somehow prohibited from imposing any interest on the account. Rather, each of his counts depend on the same faulty theory—"that defendants added *unauthorized* interest to debts that they attempted to collect." (Compl. ¶ 3, emphasis added.)  Plaintiff takes the rather large leap in logic that interest amounts sought by CPS

were *unauthorized* because he assumes that the credit card issuer—here BOA—waived interest on his account when it "charged-off" the debt from its books. Plaintiff takes the unsupportable position that this purported waiver relieves him from incurring any interest on his account unless and until such time that his account is sold to a third party, at which time interest may from then on continue to accrue. Just because a debt has been "charged off," however, does not mean that a consumer no longer owes the money (plus interest and penalties, depending on the terms and conditions of the credit agreement). And yet Plaintiff seeks to represent just such a class of consumers. (Compl. ¶¶ 58, 70.) Indeed no regulation states and no court has held that debts, and interest on those debts, are waived when creditors charge them off their books.

Plaintiff is basically claiming that he should be entitled to a windfall and be excused from the original terms of his credit card agreement (which he neither attaches nor cites) simply because he defaulted in the first instance (causing Bank of America to write-off the asset to reduce its profits and taxes, and eventually sell it to a third party). As another court put it: "In short, Plaintiff's argument amounts to the absurd proposition that credit card holders who are unable to pay their debt need merely stop payment for 180 days, at which point—through the inexorable interplay of accounting and tax reporting requirements—such debts will automatically become taxable income and be extinguished." Kelly v. Wolpoff & Abramson, 634 F. Supp. 2d 1202, 1211 (D. Colo. 2008). "This theory is as ridiculous on its face as it is incoherent in its explanation, and, assuming that it proves anything at all, it may merely suggest that my earlier decision not to impose Rule 11 sanctions on Plaintiff may have been too lenient." Id. As explained more fully below, this Court, too, should reject Plaintiff's contention and dismiss his complaint in its entirety.

## **PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that BOA charged off his account in early 2009.  (Compl. ¶ 19.)  Plaintiff does not allege the balance due on the account at that time.  However, on or about December 9, 2010, Plaintiff alleges he received a collection letter from Capital Management Services, L.P., on behalf of BOA, pertaining to a personal credit card debt in the amount of $7,077.66.  (Compl. ¶¶ 17-18, 23.)  In May of 2011, BOA allegedly reported to TransUnion that the amount of Plaintiff's debt was $7,077.  (Compl. ¶ 25.)  Plaintiff further alleges that BOA "had treated the debt as being in the amount of $7,077.66," and "sold the debt as being one of $7,077.66." (Compl. ¶¶ 32-33.)

Subsequently, on or about June 13, 2011, plaintiff alleges that CPS sent him a letter relating to his BOA account, (Compl. ¶¶ 20-22), but asserts that the amount of the debt was now stated as being $10,828.28 (Compl. ¶ 25).  Two months later, CPS reported the debt to Trans Union in the amount of $11,192.  (Compl. ¶ 26.)  Plaintiff recognizes that the increase in the amount of the debt is the result of accruing interest "for periods prior to [CPS's] alleged purchase of the debt, while the debt was owned by Bank of America."  (Compl. ¶¶ 28-29), and does not take issue with the computation of that interest.  Rather, Plaintiff contends that "Bank of America had not added such interest to the debt" nor did it send him any billing statements after it charged off his account (Compl. ¶¶ 30-31), thereby forming the crux of his complaint that "defendants added *unauthorized* interest to debt that they attempted to collect." (Compl. ¶ 3, emphasis added.)  In other words, Plaintiff contends that he should be relieved of his contractual obligations under his credit card agreement when BOA wrote off the uncollected amount and removed it from its balance sheet.

3

To support his theory that the additional interest was *unauthorized*, Plaintiff conveniently concludes that when BOA charged off his debt in early 2009, it necessarily "waived all further interest and finance charges on the account." (Compl. ¶ 34.) He attempts to piece together his waiver argument by including a host of irrelevant allegations pertaining to the average price CPS supposedly pays for consumer accounts, (Compl. ¶ 13), conjecture as to what CPS paid BOA for Plaintiff's debt, (Compl. ¶ 52), the fact that "most of the debts which defendants seek to collect are delinquent credit card accounts formerly held by banks," (Compl. ¶ 41), and that CPS often purchases credit card debts from banks months or years after the bank has charged off the debts, (Compl. ¶ 42). Plaintiff also offers speculation as to how the banking industry treats charged-off debt and why, (Compl. ¶¶ 44-46), and includes a conclusory statement that "standard form credit card agreements used by banks provide that the terms of the agreement can be changed from time to time, and that changes beneficial to the consumer such as a reduction in or a waiver of interest may be effected immediately and without notice," (Compl. ¶ 43).

Notably, none of those allegations affect Plaintiff's agreement to pay according to *his* credit card terms—which Plaintiff does not include with his complaint—and none of Plaintiff's allegations amount to an intentional or unequivocal act by BOA to waive its undisputed contractual right to collect interest (or to assign that right). Yet it is on these allegations that Plaintiff seeks monetary damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") (Count I) and the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA") (Count II), and a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA") (Count III) that assignees may not add interest to an account in the window of time between the date it was charged it off and the date it was assigned.

4

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007). A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. It requires allegations that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." EEOC v. Concentra Health Servs, Inc., 496 F.3d 773, 776 (7th Cir. 2007). Moreover, while all well-pleaded facts are accepted as true and are construed in favor of the plaintiff, the court is not obliged to accept as true legal conclusions or unsupported conclusions of fact. Hickey v. O'Bannon, 287 F.3d 656, 657-658 (7th Cir. 2002).

Here, each of Plaintiff's three counts—FDCPA, ICAA, and DJA—is based on the implausible theory that CPS unlawfully added interest for a "retroactive" period of time prior to its acquisition of the account, while the account was still owned by BOA, but for a period of time that Plaintiff assumes BOA waived interest simply because it employed a commonly used and federally required accounting device—"charge-off"—to remove an asset from its books that it deemed uncollectible. For the reasons discussed below, the court should reject Plaintiff's unsupported "assumptions."

I.       **No Allegations of a Clear, Unequivocal Intent to Waive Interest.**

Plaintiff summarily states "[b]etween the date the account was charged off and the date Bank of America allegedly sold the debt to Cavalry Investments, LLC, Bank of America waived all further interest and finance charges on the account." (Compl. ¶ 34.) However, "waiver in contract law is the intentional relinquishment of a known right." Sethness-Greenleaf, Inc. v. Green River Corp., 65 F.3d 64, 67 (7th Cir. 1995). Although a waiver of contractual rights can be implied as well as express—implied from words or actions inconsistent with the assertion of those rights, Cole Taylor Bank v. Truck Ins. Exchange, 51 F.3d 736, 739 (7th Cir. 1995)—"Illinois courts require that for a contractual waiver to be effective it must 'either have induced reliance or … be **_clearly_** inferable from the circumstances.'" McElroy v. B.F. Goodrich Co., 73 F.3d 722, 725 (7th Cir. 1996)(emphasis in original). Indeed, even a case to which Plaintiff cites in the complaint, Montgomery Ward & Co. v. Wetzel, 98 Ill.App.3d 243, 247 (1st Dist. 1981), (Compl. ¶ 52), holds that waiver must be established by a "clear or unequivocal act evincing an intention […] to release [Defendants] from compliance with their obligation."

Moreover, the party claiming waiver has the burden of establishing a "clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." See e.g., Ryder v. Bank of Hickory Hills, 146 Ill. 2d 98, 105 (Ill. 1991) (bank did not waive right to accelerate loans by canceling first scheduled sale of collateral securing loans, assisting borrowers relative to the sale of certain collateral and accepting loan payments from borrower); In re Krueger, 192 F.3d 733, 740-741 (7th Cir. 1999) (bank did not waive rights under an addendum where no evidence offered to indicate employee accepted payments with intention of waiving bank's right not to release second mortgage). Here, Plaintiff has

6

not alleged any "clear, unequivocal" act to relieve Plaintiff from his contractual obligation to pay any portion of the interest on his credit card account at charge-off or thereafter.

## II.     Interest Can Lawfully Continue to Accrue Post Charge-off.

Curiously, Plaintiff includes a number of allegations pertaining to the treatment of charged-off debt generally without specifically alleging whether any of these things occurred with respect to his account.  For example, Plaintiff alleges "[a]s a standard practice, and for a variety of sound business reasons, most banks waive interest on credit card debts after chargeoff for as long as the debts are held by the banks," (Compl. ¶ 44), and "[a]mong other reasons for this practice, banks did not, and do not, want to increase the amount of bad debts on their books, for regulatory reasons," (Compl. ¶ 45).  Yet, Plaintiff acknowledges that "[c]hargeoff means that the credit card receivable is no longer carried on the bank's books as an asset," and that "under federal regulations, a bank must charge off a credit card receivable after it has been delinquent 180 days." (Compl. ¶ 44.)

Stated differently, and as even Plaintiff would concede, BOA had no choice but to charge-off Plaintiff's debt after it had been delinquent for six months.  Importantly, Plaintiff makes no allegation—nor could he—that a "charge-off" affects the bank's (or a third party's) right to collect the debt.  This is no doubt because bookkeeping and tax reporting practices cannot support any implied waiver of any portion of Plaintiff's debt.  <u>See</u> <u>Index Futures Group, Inc. v. Schmidt</u>, 1997 WL 109978 at *6 (N.D. Ill. March 7, 1997)(Coar, J.)(evidence regarding plaintiff's treatment of defendant's debt balance on customer statements can reasonably be explained by plaintiff's internal bookkeeping and tax information reporting practices and was insufficient to find implied waiver of defendant's

debt).  Nor can they abrogate the terms and conditions governing the accrual and
computation of finance charges under the Plaintiff's credit agreement.

"Charged-off" simply does not mean that a borrower no longer owes the debt or the
interest on it.  New Century Financial Services, Inc. v. Anarah, 2007 WL 1412112 (N.J.Super.
May 15, 2007) ("in our view, the judge properly determined that defendant owed the
$3,895.50 due when the account was "charged off," plus the interest that had accrued on
the account thereafter"); Unifund CCR Partners v. Urban, 2005 WL 3624541 (Conn.Super.,
Dec. 8, 2005)("no logical reason" to think that notice from creditor reflecting account
balance of $0 as a result of charge-off of principal and interest meant consumer owed
nothing; the term charge-off is "simply transferring the account to an unpayable category,
and turning the account over for collection").  "Charging off" a debt is simply an accounting
entry that prevents the financial institution from overstating its profits by removing the
interest on the debt from its income statement and removing the debt itself from the bank's
assets.  8 Mertens Law of Fed. Income Tax'n § 30:96.  It has no bearing on the accrual of
interest itself.

## III.   Federal Banking Regulations do not Alter Contractual Accrual of Interest.

To the extent that Plaintiff relies upon the February 22, 2010, amendment to
Regulation Z, 12 C.F.R. §226.5(b )(2)(i),[1] to support his claim that interest has been waived,
(Compl. ¶ 48), such reliance is misplaced.  To begin, Plaintiff alleges that the debt was
charged off by BOA well before the effective date of the referenced amendment.  (Compl. ¶

---

[1] The amendment provides that a "periodic statement need not be sent for an account if the creditor
deems it uncollectible, if delinquency collection proceedings have been instituted, if the creditor has
charged off the account in accordance with loan-loss provisions and will not charge any additional
fees or interest on the account . . ."

19.)  As such, and pursuant to the then-effective regulation,[2] Bank of America was exempt from issuing periodic statements on an account "if the creditor deems it uncollectible, or if delinquency collection proceedings have been instituted."  12 C.F.R. §226.5(b )(2)(i).

Indeed, under the regulation then in effect, banks were permitted to charge accrued interest despite the fact that they had stopped issuing periodic statements to the consumer. See Van Slyke v. Capital One Bank, 2007 WL 2385108 (N.D. Cal. Aug. 17, 2007) (granting the creditor's motion to dismiss plaintiff's claim that it had violated TILA where plaintiff alleged that "Capital One has a policy and practice in which it refuses to issue billing statement to accounts which it has 'charged off' as a loss for tax purposes, even though it claims […] interests and fees continue to accrue on the outstanding balances.") Furthermore, assignees of a debt are likewise under no obligation to issue periodic statements, despite the fact that interest continues to accrue and be charged on the account.  See Neff v. Capital Acquisitions & Management Co., 352 F.3d 1118, 1121 (7th Cir. 2003) (holding that TILA does not require purchaser of defaulted credit card debt to send periodic statements).  Thus, the allegations that Plaintiff did not receive post-charge off billing statements should not be construed as a waiver by BOA or its assignee CPS.

Likewise, Plaintiff's reliance on Treasury Regulation 26 C. F. R. § 1.6050P-1 for the proposition that "[t]he addition of interest could be construed as meaning that the debt was *not* deemed uncollectible" (Compl. ¶47)(emphasis in the original), is flat-out wrong and irrelevant.  This IRS regulation relates only to a creditor's requirement to issue a Form 1099-C upon the happening of certain "identifiable events" involving the discharge of indebtedness.  Plaintiff has not, however, alleged that he was issued a 1099-C let alone that

---

[2] The amendment did not explicitly have retroactive effect and "[r]etroactivity is not favored in the law."  Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).

it contained any false or misleading information. Moreover, pursuant to the regulation, a creditor is not required to report as discharged amounts attributable to interest, non-principle amounts, or any other amount falling within the enumerated exceptions. 26 C.F.R. § 1.6050P-1(d). Thus, the failure to report charged-off interest does not, as Plaintiff suggests, have any bearing on the debt's collectability.

**IV.     Plaintiff Should not be Rewarded for Defaulting on his Account.**

In any event, this Court should reject Plaintiff's preposterous request that he be relieved from paying contracted for interest solely because BOA charged-off his account to remove a non-performing asset from its books. In deciding that Section 5 of the Illinois Interest Act did not affect the common law rights of assignees to charge a higher rate of interest, the Seventh Circuit reasoned, "once assignors were authorized to charge interest, the common law kicked in and gave the assignees the same right, because the common law puts the assignee in the assignor's shoes, whatever the shoe size." Olvera v. Blitt & Gaines, P.C., 431 F.3d 285, 288-289 (7th Cir. 2005). Moreover, the court observed, "while it is easy to see why consumer-protection concerns would lead a state to want to license firms that charge very high interest rates to consumers, assignees do not deal with consumers. It was the assignors who persuaded the plaintiffs to pay high interest rates; *the plaintiffs could hardly have supposed that the rates would plummet if they defaulted!*" Id. (emphasis added.)

By the same token here, Plaintiff agreed to be charged at a certain interest rate pursuant to his credit agreement and should not suppose (and this Court should not infer based on the allegations) that his interest rate would plummet to zero from the time his debt was charged-off until his creditor eventually assigned it. To hold otherwise would essentially release him (and all putative class members) entirely from their legal obligation

to pay contracted for interest during that timeframe merely because they had defaulted on their debt for so long that the original creditor was forced to deem it "uncollectible."

## CONCLUSION

Each of Plaintiff's causes of action depends for its vitality on the conjecture that BOA waived interest on Plaintiff's account from the date of charge-off to the date of sale and that CPS thereafter improperly sought to "retroactively" collect interest on the post charged-off debt. (Compl. ¶¶ 54, 67, 78.)[3]  Because, as set forth above, CPS did not charge additional "unauthorized interest," Plaintiff's claims pursuant to the FDCPA and ICAA fail, and his request for declaratory relief should be denied.

WHEREFORE, for all of the foregoing reasons, Defendants, Cavalry Portfolio Services, LLC and Cavalry Investments, LLC respectfully request that this Court enter an order dismissing Plaintiff's Complaint and any other relief the Court deems just and appropriate.

Respectfully submitted,

CAVALRY PORTFOLIO SERVICES, LLC and
CAVALRY INVESTMENTS LLC

By:  /s Raechelle Delarmente Norman
     One of its Attorneys

---

[3] Moreover, Plaintiff's claim under the ICAA should be dismissed for the further reason that there is no private cause of action under the ICAA and Plaintiff has not alleged any actionable damages. As a threshold matter, it is not clear that a private right of action exists under the ICAA.  See McCabe v. Crawford & Co., 272 F. Supp. 2d 736, 751-752(N.D. Ill. 2003)(Castillo, J.)("we are not entirely convinced that the ICAA should be interpreted to imply a private cause of action…").  Even assuming the ICAA allows a private right of action, Plaintiff would, at a minimum, be required to show actual injury before he could bring such a claim.  McCabe, 272 F. Supp. 2d at 751-752. Plaintiff does not allege he paid any portion of his debt to CPS, let alone any supposedly "unauthorized interest."  Plaintiff's only allegation supportive of any damages is that he "was required to consult counsel and obtain his credit report."  (Compl. ¶ 40.)  This is insufficient and without actual damages, the ICAA simply does not apply.

Anna-Katrina S. Christakis (ARDC #6242675)
Raechelle Delarmente Norman (ARDC #6292683)
Grady Pilgrim Christakis Bell LLP
53 West Jackson Boulevard, Suite 1515
Chicago, Illinois 60604
Ph. (312) 939-0953
Fax (312) 939-0983

**<u>CERTIFICATE OF SERVICE</u>**

Raechelle Delarmente Norman, an attorney, certifies that on January 17, 2012, she electronically filed the foregoing **Defendants' Motion to Dismiss**, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Daniel A. Edelman
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
dedleman@edcombs.com

Francis R. Greene
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
fgreene@edcombs.com

Cathleen M. Combs
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
ccombs@edcombs.com

James O. Latturner
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
jlatturner@edcombs.com

/s/ Raechelle Delarmente Norman