**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN SIMKUS, | ) | |
| on behalf of himself and the classes | ) | |
| described herein, | ) | |
| | ) | 11-cv-7425 |
| Plaintiff, | ) | |
| | ) | Judge Marvin E. Aspen |
| vs. | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, | ) | |
| LLC and CAVALRY | ) | |
| INVESTMENTS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Defendants Cavalry Portfolio Services, LLC and Cavalry Investments, LLC move

pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Jonathan Simkus's claims under the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* ("FDCPA") the Illinois Collection

Agency Act, 225 ILCS 425/1 *et seq.* ("ICAA"), and for declaratory and injunctive relief.

Defendants' motion should be denied because the complaint satisfies all the requirements of Fed.

R. Civ. P. 8.

At issue in this case is whether Defendants, who purchased Plaintiff's charged-off credit

card account from Bank of America, can retroactively add interest to the account for a period (1)

prior to Defendants' purchase of the account and (2) during which Bank of America waived any

interest on the account. If Defendants cannot retroactively add waived interest, then Defendants

violated the FDCPA and ICAA in doing so.

## I.     STATEMENT OF FACTS

### A.     Bank of America Waived Interest Subsequent to January 2009

Plaintiff's last payment to Bank of America ("BOA") on the account was in September

2008. (Complaint ("Cmplt."), Exhibit C.) BOA "closed" (charged-off) the account in January

2009. (Cmplt. ¶ 19, and Exhibit C.) The amount at charge-off was $7,077 (Cmplt. ¶ 50), which

amount would have included charges incurred and interest accrued prior to that date.

In December 2010, almost two years after charge-off, BOA, through a debt collector, attempted to collect the debt, still in the amount of $7,077.66. (Cmplt. ¶¶ 17-19, 23, and Exhibit A.) Five months later, in May 2011, around the time BOA sold the account to debt buyer Cavalry Investments, LLC ("CI"), BOA confirmed to the credit reporting agency, Trans Union, that the account's "high balance" continued to be $7,077. (Cmplt. ¶¶ 12, 25 and Exhibit C.)

Also in May 2011, CI purchased Plaintiff's account from BOA for three percent of the face value of the account. (Cmplt. ¶ 52.) In August 2011, Defendants confirmed to Trans Union that the face value of the account, the "Original Balance", was $7,078. (Cmplt., Exhibit C.) A few weeks after CI purchased the account, in June 2011, Defendants sent Plaintiff a collection letter stating that CI had purchased the BOA account and demanding payment of $10,828.28. (Cmplt. ¶¶ 20-21, 25 and Exhibit B.) The extra $3,750.62 added to the account is interest that BOA had waived during the period between the account charge-off date (January 2009) and sale of the account to CI sometime in May or June 2011. Defendants retroactively added the interest which BOA had waived to the account. (Cmplt. ¶¶ 29-35.) In August 2011, Defendants reported to Trans Union that the amount "past due was $11,192. (Cmplt. ¶ 26, and Exhibit C.) Not only were Defendants adding retroactive interest, they were charging interest on the retroactively-added interest. Plaintiff was confused by Defendants' June 2011 letter and requested verification of the debt. (Cmplt. ¶¶ 36-37, and Exhibit D.)

**B.      BOA Waived Post-Charge-Off Interest for Sound Business Reasons**

Although the reason BOA waived interest is irrelevant for the purpose of resolving Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss, there are sound business reasons why BOA waived the interest. Charge-off means that a credit card receivable is no longer carried on the bank's books as an asset. Federal regulations require a bank to charge off a credit card receivable after it has been delinquent 180 days; it may charge it off sooner. (Cmplt. ¶ 44.) Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and

2

Account Management Policy, 65 FR 36903 (June 12, 2000). (Cmplt. ¶ 44.)  Plaintiff does not

contend that a charged-off debt cannot be collected, as claimed by Defendants (Motion, p. 2).

As a standard practice, and for a variety of sound business reasons, most banks waive

interest on credit card debts after charge-off. (Cmplt. ¶ 45.) Among other reasons for this

practice, banks, for regulatory reasons, did not, and do not, want to increase the amount of bad

debts on their books. (Cmplt. ¶ 46.) To claim additional post-charge-off interest that it was not

ever likely to collect, BOA would have had to increase the amount of bad debt it reported to

bank examiners. Banks regulated by the Federal Deposit Insurance Corporation (including BOA)

must maintain an "allowance for loan and lease losses" (or "ALLL") in order to guard against

the effect of defaults. A large amount of bad debt negatively affects a bank's health, and

increases the possibility of regulatory action.  (Appendix 1 (excerpts of *DSC Risk Management*

*Manual of Examination Policies*), §3.2 at 3-4.  See *id*., §1-1 at 4-5 (effect of insufficient ALLL

amount on overall evaluation of banks' asset quality).) BOA gave up the interest to avoid

increasing the amount of bad debt on its books.

In addition, prior to February 22, 2010 (when the regulation was amended), Regulation Z

required banks to issue periodic statements on an account until the bank "[deemed] it

uncollectible," or instituted legal proceedings. 12 C.F.R. § 226.5(b)(2). The addition of interest

could be construed as meaning that the debt was *not* deemed uncollectible. *See* 26 C.F.R.

§1.6060P-1. Most banks prudentially did not add interest to charged off debts. (Cmplt. ¶¶ 46-47.)

The amended 12 C.F.R. §226.5(b)(2) (recently renumbered 12 C.F.R. §1026.5(b)(2))

confirm that banks must send periodic statements on all accounts, including defaulted accounts,

for any period during which interest or fees are added to the account. 12 C.F.R. § 226.5(b)(2)(I)

("A periodic statement need not be sent for an account if the creditor deems it uncollectible, if

delinquency collection proceedings have been instituted, if the creditor has charged off the

account in accordance with loan-loss provisions and will not charge any additional fees or

interest on the account. . . .") Banks generally prefer to waive the interest and save the expense

of preparing and sending statements. (Cmplt. ¶ 48.) BOA followed standard practice in the banking industry in Plaintiff's case, and did not send any statements to Plaintiff subsequent to charge-off. (Cmplt. ¶ 31.)

Most of the debts which Defendants seek to collect are credit card accounts which banks have charged-off months or years previously. (Cmplt. ¶¶ 41-42.) Cavalry Portfolio Services, LLC (CPS), on behalf of CI, engages in a practice of adding interest to credit card debts for periods during which the assignor bank has waived the interest and during which CI does not own the debt. CI adds interest for the period between charge-off and purchase by CI. (Cmplt ¶ 49.)

## II.  STANDARD OF REVIEW

When reviewing a complaint, a court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the nonmoving party's favor." *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). A motion to dismiss under Fed.R.Civ.P. 12(b)(6) only tests the "sufficiency" of a complaint, and not whether the facts alleged in it will be ultimately proven true. *Id.*

In the course of analyzing Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Swanson v. Citibank NA*, 614 F.3d 400, 404 (7th Cir. 2010) held that the "plausibility" standard set by the Supreme Court requires only that a plaintiff "must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." (Emphasis in the original.)

## III.  PLAINTIFF HAS AMPLY PLED FACTS EVIDENCING BOA'S WAIVER OF INTEREST SUBSEQUENT TO CHARGE-OFF OF PLAINTIFF'S ACCOUNT

Plaintiff has pled facts sufficient under Fed. R. Civ. P. 8 to show that BOA waived all interest on Plaintiff's account subsequent to charge-off in January 2009. Waiver can be shown or inferred "from the conduct of the party who is alleged to have waived a right." *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991).

4

> Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver. "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." Whether [some entity has] waived its acceleration rights is a question of fact. . . .

*Id.* (citations omitted) (quoting *Kane v. Amer. Nat'l Bank & Trust, Co.*, 316 N.E.2d 177, 182 (Ill. App. Ct. 1974). *Accord, Delta Consulting Group Inc. v. R. Randle Const. Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009).

Plaintiff has pled facts evidencing BOA's waiver of post-charge-off interest on Plaintiff's account between charge-off (January 2009) to sale of the account to CI in May 2011. First, BOA charged off or "closed" the account in January 2009. (Cmplt., Exhibit C.) The amount at charge-off was $7,077. (Cmplt. ¶ 50, and Exhibit C.) Twenty-three months later, in December 2010, the amount BOA was seeking to collect on the account remained $7,077.66. (Cmplt. ¶ 17, and Exhibit A.) Twenty-eight months after charge-off, at the time BOA sold the account to CI, the amount on the account remained $7,077.66. (Cmplt. ¶ 25, and Exhibit C.) If BOA had been imposing interest and late fees between December 2010 and May 2011, the high balance in May 2011 would have been higher than $7,077.66, the amount BOA sought to collect in December 2010. In fact, the two balances are identical (with the exception of a few cents which is explained by the fact that credit reporting agencies don't include cents on tradelines).

It is more than plausible – and plausibility is what matters here, *Swanson v. Citibank NA*, 614 F.3d 400, 404 (7th Cir. 2010) – to conclude that BOA waived all interest on Plaintiff's account from charge-off to sale of Plaintiff's account.

Plaintiff has presented concrete evidence showing BOA's waiver of interest. The reason for BOA's waiver is immaterial for purposes of resolving Defendants' motion. However, Plaintiff has alleged facts indicating that BOA had a reason to waive interest post-charge-off. In fact, it is a standard banking practice for banks waive interest on credit card debts after charge-off. Among other reasons for this practice, banks, for regulatory reasons, did not, and do not, want to increase the amount of bad debts on their books. (Cmplt. ¶ 45.) In addition, the law

probably required, and now expressly requires, banks to send monthly statements if they add fees or interest. Printing and sending statements on debts which are unlikely to be collected does not make sense.

Defendants claim conclusorily that Plaintiff has not complied with Fed. R. Civ. P. 8. Significantly, Defendants make no reference to the complaint's exhibits, even though they are part of the complaint, Fed. R. Civ. P. 10(c), and the Court must consider them when ruling on a motion to dismiss. *ABN Amro v. Capital Int'l Ltd.*, 2007 U.S. Dist. LEXIS 19601, *9 (N.D. Ill. 2007) ("The pleadings include the complaint, the answer, and any written instruments attached to the complaint as exhibits.") Because Plaintiff has complied with Rule 8, Defendant's motion should be denied.

## IV. DEFENDANTS VIOLATED THE FDCPA AND ICAA BY RETROACTIVELY ADDING INTEREST THAT BOA HAD WAIVED TO PLAINTIFF'S ACCOUNT

### A. AN ASSIGNEE STEPS INTO THE SHOES OF THE ASSIGNOR AS OF THE TIME OF THE ASSIGNMENT, AND ACQUIRES ONLY THOSE RIGHTS THAT THE ASSIGNOR HAD AND DID NOT WAIVE

Defendants argue (Motion, pp. 7-8) that the fact that an account is charged-off does not affect the right of a third party to collect on the account. This argument merely begs the question as to the amount that a third party has a right to collect. If, as alleged here, the bank waives the interest between charge-off and sale of the account, the debt buyer cannot retroactively assess the interest that the bank waived.

It is axiomatic that an assignee only acquires those rights that the assignor had, and had not waived, as of the date of the assignment. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 762-763 (7th Cir. 2007). In the words of one Illinois court,

> it is well settled in Illinois that when a valid assignment is effected, the assignee (1) acquires all of the interest of the assignor in the property that is transferred and (2) stands in the shoes of the assignor. Moreover, the assignee of a contract for the purchase of real estate acquires no greater rights in the property than were possessed by his assignor, the original contract vendee and *takes the assignor's interest subject to all legal and equitable defenses existing at the time of assignment*.

*Stavros v. Karkomi*, 349 N.E.2d 599, 607 (Ill. App. Ct. 1976)(citations omitted) (emphasis

added). *See also A.J. Maggio v. Willis*, 738 N.E.2d 592, 596 (Ill. App. Ct. 2000) (quoting *Litwin v. Timbercrest Estates, Inc.*, 347 N.E.2d 378, 379-380 (Ill. App. Ct. 1976) ("The assignee can obtain no greater right or interest than that possessed by the assignor, inasmuch as one cannot convey that which he does not have.")

In re *400 Walnut Assocs. LP*, No. 10-16094 SR, Adv. No. 10-0456, 2011 Bankr. LEXIS 4092 (Bankr. E.D. Pa. Oct. 20, 2011) is very similar to the case at bar. In *400 Walnut*, the assignor bank did not assess compound interest prior to assignment of a note. *Id.* at *9. The assignee added compound interest to the note for the period of time in which the assignor held the note and chose not to assess compound interest *Id.* The court held that assignor's actions evidenced waiver of the right to assess compound interest and, consequently, that the assignee has no right to assess compound interest retroactively:

> A commercial lender such as Sovereign certainly is presumed to be aware of its rights with regard to the accrual of interest. Yet it did not compound interest while it held the note. As assignee, 4th Walnut stands in the shoes of the assignor (Sovereign) and so its rights rise no higher than Sovereign's. *Because Sovereign waived its right to compound unpaid interest for the time it held the loan, 4th Walnut has no right to reverse that decision.* . . . 4th Walnut can point to no decision which expressly upholds this practice, which practice the Court finds to be avaricious and highly improper.

*Id.* at *11-12 (emphasis added) (citations omitted). *See also In re Crystal Properties, Ltd.*, 268 F.3d 743 (9th Cir. 2001) (assignee could not recover interest at the default interest rate for period in which assignor had waived its rights to recover interest at default interest rate); *Padilla v. Ghuman*, 183 P.3d 653, 659-660 (Colo. Ct. App. 2007) (accord).

Like the assignor in *400 Walnut*, BOA, a sophisticated lender and one of the largest banks in the world, "is presumed to be aware of its rights with regard to the accrual of interest." If BOA waived the right to assess interest post-charge-off, Defendants had "no right to reverse that decision." To do so was "avaricious and highly improper." *400 Walnut*, 2011 Bankr. LEXIS 4092, at *11-12. To do so also violated the FDCPA and the ICAA. In fact BOA did waive post-charge-off interest. The amount of the debt in May 2011, around the time BOA reported the account to Trans Union and sold it to CI, was the same as it had been some five months earlier

when BOA retained a debt collector to attempt to collect the debt. (Cmplt. ¶¶ 12, 17-19, 23, 25 and Exhibits A, C.) If BOA was adding interest to the account, those amounts would have been different.

Defendant cites (Motion p. 10) *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 288-89 (7th Cir. 2005) for the proposition that "the common law puts the assignee in the assignor's shoes, whatever the shoe size." *Olvera* involved the right of an assignee to charge post-charge-off interest rates subsequent to the assignee's purchase of the charged-off account.[1] Here, in contrast, Cavalry wants to stand in BOA's shoes – while BOA is still wearing them. Plaintiff is not contesting Defendants' right to assess interest beginning with Defendants' purchase of Plaintiff's account; rather, Plaintiff challenges Defendants imposition of retroactive interest – for the time prior to Defendants' purchased the account, when BOA had chosen to waive that interest.

### B. DEFENDANTS VIOLATED THE FDCPA BY ADDING WAIVED INTEREST RETROACTIVELY AND MISREPRESENTING THE AMOUNT PLAINTIFF OWED

Defendants violated both §§ 1692e and f of the FDCPA when they added interest to Plaintiff's account that BOA had waived. Section 1692e of the FDCPA prohibits "false, deceptive, or misleading representation(s) or means in connection with the collection of any debt." 15 U.S.C. § 1692e. More specifically, § 1692e prohibits:

(2)     The false representation of --
        (A)     the character, *amount*, or legal status of any debt; . . .
(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt . . . .

---

[1] In August 2011, CPS reported the account to Trans Union in the amount of $11,192 and, in September 2011, sent a second letter to Plaintiff, stating that the amount had increased to 11,220.79. (Cmplt. ¶¶ 26, 38, and Exhibits C and E.). In addition to adding retrospective interest which BOA had waived, Defendants began adding interest on the account for the period subsequent to Defendants' purchase of the account. Plaintiff does not dispute the right of a debt buyer, upon notifying the debtor, to resume adding contractual or statutory interest for the period subsequent to its purchase of the account.

15 U.S.C. §§ 1692e, e(2)(A), e(5), e(10) (emphasis added).

Section 1692f of the FDCPA provides that a debt collection may not use "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. More specifically, § 1692f prohibits:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

15 U.S.C. § 1692f (1).

In *Fields v. Wilbur Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), the Seventh Circuit reversed the granting of a Fed. R. Civ. P. 12(b)(6) motion, holding that an attorney debt collector who sent a dunning letter to a consumer which, without explanation, increased the amount owed by the amount of the attorney's legal fees violated § 1692e(2)(A) and § 1692f. *Fields*, 383 F.3d at 565-566. *Fields* held that, even if the legal fees were permitted by law or contract, and even if otherwise reasonable, a fact finder could conclude that, without explanation, lumping the fees together with the amount of the original debt was misleading and unfair. Here, Defendants did not explain in their collection letters that they were lumping retroactively-applied interest with the original amount of the debt.

Numerous other courts have held that misstating the amount owed, including attempts to assess unlawful interest, violate §§ 1692e and f of the FDCPA. *Pollice v. National Tax Funding LP*, 225 F.3d 379, 408 (3d Cir. 2000) (collector "presumably... violated [15 U.S.C. §1692f(1)] regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims"); *Acik v. IC Systems Inc.*, 640 F. Supp. 2d 1019, 1024-27 (N.D. Ill. 2009) (unlawful interest and fees added to medical debt); *Nance v. Ulferts*, 282 F. Supp. 2d 912, 916-918 (N.D. Ind. 2003) (defendants' violations of state usury laws violated FDCPA); *Sunga v. Rees Broome PC*, 2010 U.S. Dist. LEXIS 81970, *10-23 (E.D. Va. Aug. 12, 2010); (unlawful condominium assessments); *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 269 (D. Conn. 2005) (debt

9

collector who sought to collect more than $10,000 on a $400 debt violated §§ 1692e(2)(A) and f(1)); *Crippen v. Stites*, 346 B.R. 115, 120-121 (Bankr. E.D. Pa. July 25, 2006) (allegations that debt collector sought to collect amounts in excess of that allowed by law and the mortgage instrument stated a claim under §§ 1692e(2)(A) and f(1)); *Maxwell v. Fairbanks Capital Corp.*, 281 B.R. 101, 119 (Bankr. D. Mass. July 16, 2002) (accord).

Shortly before Defendants purchased Plaintiff's account, the amount owed according to BOA was $7,077.66. (Cmplt. ¶¶ 17, 25, and <u>Exhibits A and C</u>.)  Shortly after purchase, Defendants sent Plaintiff a letter representing the amount owed as $10,828.28. The amount of the debt did not increase by $3,750.62 between December 2010 (or May 2011) and June 2011; such an increase would require an interest rate in excess of 100%. No interest rate in excess of 100% is authorized on any credit card by BOA and its affiliates. (Cmplt. ¶ 28.) Instead, the $3,750.62 increase in the amount owed is due to Defendants' adding interest which BOA had waived to the account. For the reasons discussed above, Defendants had no right to retroactively add the interest to Plaintiff's account that BOA had waived. Defendants' attempt to collect amounts not owed by Plaintiff violated §1692e(2)(A) and § 1692f(1). *Fields*, *Pollice*, *Acik, Nance, Sunga, Goins, Crippen*, *Maxwell, supra*.

Even if, *arguendo*, Defendants properly added retroactive interest, under *Fields*, Defendants still violated §1692e(2)(A) and § 1692f by failing to explain in their dunning letters (Cmplt., <u>Exhibits B and E</u>) how in the space of a month or a few months, Plaintiff's debt increased by $3,750.62 and more. As *Fields* noted, "One simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt." *Fields*, 383 F.3d at 566. Defendants made no effort to itemize the amount they were seeking to collect from Plaintiff. On two separate occasions (Cmplt., <u>Exhibits B and E</u>), Defendants simply listed an amount owed as a lump sum, an amount that made no sense to Plaintiff in light of his prior understanding of the amount BOA was claiming he owed. (Cmplt. ¶36.)

10

### C.    DEFENDANTS VIOLATED THE ICAA BY ADDING RETROSPECTIVE INTEREST THAT BOA HAD WAIVED AND MISREPRESENTING THE AMOUNT PLAINTIFF OWED

Defendants violated portions of the ICAA when they added interest to Plaintiff's account that BOA had waived. Specifically, Defendants violated the following provisions of 225 ILCS 425/9:

> **. . . (20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . .**
>
> **(26) Misrepresenting the amount of the claim or debt alleged to be owed.**
>
> **(27) Representing that an existing debt may be increased by the addition of attorney's fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt. . . .**
>
> **(29) Collecting or attempting to collect any interest or other charge or fee in excess of the actual debt or claim unless such interest or other charge or fee is expressly authorized by the agreement creating the debt or claim unless expressly authorized by law . . .**

Defendants claim in a footnote (p. 11 n. 3) that there is no private right of action in the ICAA. Defendants are wrong. *Sherman v. Field Clinic,* 74 Ill. App. 3d 21, 392 N.E. 2d 154 (1st Dist. 1979), was not ambiguous in its holding that there *is* a private cause of action under the ICAA. *Sherman* has been approved of by the Illinois Supreme Court. *Sawyer Realty Group, Inc. v. Jarvis Corp. et al.,* 89 Ill. 2d 379, 386, 432 N.E.2d 849, 852 (1982) (citing *Sherman* for the proposition that "it is not necessary to show a specific legislative intent to create a private right of action. If there is no indication that the remedies available are only those the legislature expressed in the Act, then where it is consistent with the underlying purpose of the Act and necessary to achieve the aim of the legislation, a private right of action can be implied.") Further, *Sherman* was codified by legislation when the legislature provided for a five year statute of limitations under the ICAA on January 1, 1996. 225 ILCS 425/9.5, P.A. 89-387. *Sherman* was also adopted by the legislature when it re-enacted the ICAA pursuant to the Regulatory Sunset Act, *see* 5 ILCS 80/4.26 (current Jan. 1, 2016 expiration date) and former 5 ILCS 80/4.16 (Jan. 1, 2006 expiration date), without altering it to exclude a private cause of action. Some 20

11

other amendments have also been made to the ICAA between 1979 and the present. Under accepted principles of statutory interpretation, "the legislature has acquiesced in the court's construction of the statute, which has by now become part of the fabric of the [statute]." *Charles v. Seigfried*, 165 Ill. 2d 482, 492, 651 N.E.2d 154, 159-60 (1995).

The same footnote claims, without citation of anything, that Plaintiff's allegations of damages are insufficient. The point is not developed and thus waived. At the very least, Plaintiff would be entitled to nominal damages, punitive damages sufficient to stop Defendant's practice (specifically allowed by *Sherman*), a declaration of rights, and an injunction against unauthorized interest.

## V.  DEFENDANT'S REMAINING ARGUMENTS ARE WITHOUT MERIT

Defendants make a number of arguments that attack straw men or pursue red herrings. These arguments do not support dismissal of Plaintiff's complaint.

### A.  WHETHER BOA ACCRUED INTEREST IS A FACT QUESTION

Notwithstanding the clear factual allegations in the complaint, Defendants speculate (Motion, p. 9) that interest could have been accruing on Plaintiff's account even if BOA was not required to send, and did not send, statements to Plaintiff. This speculation in contradicted by the facts that BOA actually did waive interest between charge-off and sale of Plaintiff's account. Also, BOA had all kinds of incentive *not* to assess interest. As alleged in the complaint, banks do not want to increase the amount of bad debt on their books. (Cmplt. ¶ 45.)

In fact, as stated above, the evidence shows BOA did *not* add interest on Plaintiff's account. Between December 2010 and May 2011, the amount BOA considered owing on the account – $7077.66 stayed the same. Also, Defendants reported to Trans Union that the debt was $7,078 at purchase. (Cmplt., <u>Exhibit C</u>.)

### B.  DEFENDANT'S DISCUSSION OF THE LAW REGARDING WHETHER PERIODIC STATEMENTS WERE REQUIRED BEFORE 2010 IS BOTH IRRELEVANT AND INCORRECT

Defendants claim (Motion, p. 9) that prior to 2010 a creditor did not need to send

monthly statements even if it added interest to a charged-off account, citing *Van Slyke v. Capital One Bank*, 2007 U.S. Dist. LEXIS 64015, *17-*19 (N.D. Cal. 2007). This claim is both irrelevant and incorrect. Plaintiff has pled that BOA intentionally waived post-charge-off interest. Attacking the validity of BOA's motives does not suggest that the decision was not made.

Beyond that, Plaintiff respectfully submits that *Van Slyke* is simply wrong. Prior to the 2010 amendment to 12 C.F.R. §226.5(b), the duty to send billing statements was relieved when "the creditor deems it uncollectible." 12 C.F.R. §226.5(b)(2) (2009). The most logical meaning of "uncollectible" in the context of a creditor's dealings with a receivable is that given in IRS regulations, which describe a "decision by the creditor.... to **discontinue collection activity and discharge debt**" as a reportable event that may result in income to the debtor from discharge of indebtedness. 26 C.F.R. §§1.6050P-1(b)(2)(i)(G). (Emphasis added.) That definition has been in place since January 4, 1996. 61 Fed.Reg. 262, 268 (Jan. 4, 1996).

*Van Slyke* erroneously assumed, without reasoning, that "uncollectible" in Regulation Z meant "charged-off" even though banks and assignees regularly collect charged-off debt. After *Van Slyke*, the Federal Reserve Board ("FRB") resolved any uncertainty about banks' duties by effectively overruling the decision. The FRB amended Regulation Z to make clear that a debt is uncollectible "**when a creditor has ceased collection efforts, either directly or through a third party.**" 74 Fed.Reg. 5244, 5276 (Jan. 29, 2009) (emphasis added). This is the IRS definition, so that a bank which continues to charge interest after chargeoff must send periodic statements. The FRB found this conclusion to be dictated by the regulation's plain meaning:

> creditors are not required to send periodic statements on accounts the creditor has deemed "uncollectible," which is not specifically defined. In the June 2007 Proposal, the Board sought comment on whether guidance on the term "uncollectible" would be helpful. . . .
>
> Based on the plain language of the term "uncollectible" and the importance of periodic statements to show consumers when interest accrues or fees are assessed on the account,

the Board is adopting new comment 5(b)(2)(i)-3.... **The comment clarifies that an account is "uncollectible" when a creditor has ceased collection efforts, either directly or through a third party.** [*Id*. (emphasis added).][2]

In its final 2010 regulations, the FRB also provided, for the first time, that banks could cease sending statements upon chargeoff if, and only if, no interest or fees were added thereafter.

The FRB's interpretation of its pre-2010 regulations has the force and effect of law unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-567 (1980). The FRB's interpretation of "uncollectible" is clearly rational, since a creditor that is adding interest on a debt and then sells it to a debt buyer plainly does not consider it to be "uncollectible" in any sense. If a bank deems an account to be uncollectible, it would naturally also conclude that the addition of further interest would be pointless – if the amount already due would not be collected, additional interest would not be collected. As a result, the FRB's interpretation controls.

Plaintiff does not contend that any of the events constituting "discharge" within 26 C.F.R. §§1.6050P-1 occurred, contrary to Defendants' statement (Motion, p. 9), but merely refers to the IRS regulation as explaining the meaning of "uncollectible" in Regulation Z. Both regulations apply to banks holding bad debts and, as the FRB ultimately determined, the term "uncollectible" should mean the same thing in both regulations.

C.    **IT IS DEFENDANTS AND NOT HAPLESS DEBTORS WHO OBTAIN A WINDFALL**

Finally, Defendants argue (Motion, p. 10), that Plaintiff should not "be relieved from paying contracted for interest solely because BOA charged-off his account to remove a non-performing asset from its books." Defendants, who paid approximately three cents on the dollar (approximately $200) for Plaintiff's $7,077.66 account, are complaining that they can only try to

---

[2] The "comments" referred to are found in 12 C.F.R. part 226 Supp. I, and are numbered to correspond with the provisions of Regulation Z to which they pertain. The commentary expands upon Regulation Z. For many years, the commentary has been issued pursuant to the notice-and-comment rulemaking procedures of the Federal Administrative Procedure Act, and both Regulation Z and the commentary have the force and effect of law.

collect $7,077.66 and not $11,000. Plaintiff may not have a legal right to have "his interest rate . . . plummet to zero" (Motion, p. 10), but he did have a legitimate expectation that he was dealing with a responsible financial institution that treats customers fairly in hard times, not predators who demand a return on investment of 5500% instead of 3500% whether or not the law allows it. In any event, the only issue before the Court is whether Plaintiff's complaint satisfies Fed. R. Civ. P. 8. Because the complaint meets all the requirements of Rule 8, Defendants' motion should be denied.

## V.       CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges the Court to deny Defendants' motion to dismiss.

Respectfully submitted,

s/Francis R. Greene
Francis R. Greene

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN COMBS LATTURNER & GOODWIN LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## CERTIFICATE OF SERVICE

I, Francis R. Greene, hereby certify that on February 16, 2012, I caused to be filed the foregoing document via the CM/ECF System, which caused to be sent notification of such filing to the following parties via electronic mail:

Anna-Katrina S. Christakis
kchristakis@gradypilgrim.com

Raechelle Delarmente Norman
rnorman@gradypilgrim.com

s/Francis R. Greene
Francis R. Greene