**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN SIMKUS, on behalf of himself and the classes defined herein, | ) | |
| Plaintiff, | ) | Case No. 11-cv-7425 |
| v. | ) | Judge Marvin E. Aspen |
| CAVALRY PORTFOLIO SERVICES, LLC; and CAVALRY INVESTMENTS, LLC, | ) | Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, CAVALRY PORTFOLIO SERVICES, LLC and CAVALRY INVESTMENTS, LLC (collectively, "Defendants" or "CPS"), by their attorneys, Anna-Katrina S. Christakis and Raechelle Delarmente Norman, Grady Pilgrim Christakis Bell LLP, *of counsel*, submit this Reply in Support of their Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint.

**INTRODUCTION**

Plaintiff's Response to Defendants' Motion to Dismiss further clarifies that Plaintiff's Complaint warrants dismissal—he fails to point to any specific factual allegations that amount to an intentional waiver, and fails to cite any legal authority that supports his theory that CPS acted in an unlawful manner when it sought to collect so-called "retroactive" interest. Rather, he rests his entire case on the mere conclusion "that BOA waived all interest on [his] account from charge-off to sale" and insists that his "story" holds enough water under the plausibility standard. (Resp. 4-5.) On the contrary, "conclusory legal statements 'do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law.'" Swanson v. Citibank, N.A., 614 F.3d 400, 405 (7th Cir. 2010).

As an initial matter, it appears that both sides agree on these important points: (1) charge-off means that the receivable is no longer carried on the creditor's books as an asset, (2) creditors, like Bank of American ("BOA"), are legally required to charge-off delinquent accounts after 180 days, (3) subsequent owners, like Cavalry Investments, may charge and collect interest on charged-off accounts, (4) interest on charged-off accounts may continue to accrue absent a waiver of the contractual right to do so, (5) waiver is the intentional relinquishment of a known right, and (6) waiver of a contractual right to charge interest must be evidenced by a clear, unequivocal and decisive act of the party who is alleged to have committed waiver.

Where the parties diverge is on the sufficiency of the facts alleged to support the conclusion that BOA waived interest on Plaintiff's account from the date of charge-off to the date of sale to Cavalry Investments. Defendants contend that the complaint is devoid of any facts demonstrating a "clear, unequivocal and decisive act" to relieve Plaintiff of his contractual obligation to pay interest on his credit card account at charge-off or thereafter, and that interest can lawfully continue to accrue notwithstanding the fact that the creditor has charged-off the account. Plaintiff contends, almost circularly, that BOA waived interest subsequent to January 2009 (the alleged date of charge-off) because it charged-off the account for "sound business reasons" (in other words, it adhered to the legal mandate that it charge-off non-performing assets on the 181st day of delinquency). (Resp. 1.) No matter how he tells it, Plaintiff's "hypothetically possible" story does not support claims under the FDCPA or the ICAA.

**ARGUMENT**

Plaintiff states in his Response that "Defendants claim conclusorily that Plaintiff has not complied with Fed. R. Civ. P. 8" and further argues that "[b]ecause Plaintiff has complied with Rule 8, Defendant's [*sic*] motion should be denied." (Resp. 6.) Not only does he misstate Defendants' argument (the motion does not contend that the Complaint is deficient under Rule 8), but Plaintiff completely understates his pleading obligations. Although Rule 8 requires only "a short and plain statement of the claim showing the pleader is entitled to relief," a complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Aschcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Indeed, the Supreme Court instructed that "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Thus, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff's Complaint here, even taking into account his attached exhibits, presents precisely the type of conclusory, deficient pleading that the Supreme Court cautioned against—he offers "nothing more than conclusions" to support each of his causes of action. See Unterreiner v. Stoneleigh Recovery Assoc., LLC, 2010 WL 2523257, at *2 (N.D. Ill. June 17, 2010) (Grady, J.) (dismissing FDCPA claim for abuse and harassment notwithstanding plaintiff's response that allegations that collector "screamed" and insulted her were consistent with story that could entitle her to relief); Ruiz v. Midland Credit Management, Inc., 2012 WL 33016, at *4 (N.D. Ind. Jan. 6, 2012) (dismissing FDCPA claim based on "bare

assertion that [defendant] used 'false and deceptive means in an attempt to collect a debt'" notwithstanding allegation that dunning letter advised that defendant was "considering forwarding this account to an attorney in your state for possible litigation"); Norton v. American Home Mortgage Servicing, Inc., 2011 WL 5828122, at *2 (E.D. Wis. Nov. 18, 2011) (dismissing FDCPA claim where plaintiff's assertions did not appear to have any factual basis). Accordingly, Defendants' Motion to Dismiss must be granted and Plaintiff's Complaint dismissed in its entirety.

## I. Interest Can Lawfully Continue to Accrue on Charged-Off Accounts.

Plaintiff makes no response to the fact that interest can continue to accrue on his debt despite charge-off. Indeed, he does not address, let alone distinguish, the four cases cited by Defendants for this proposition: Kelly v. Wolpoff & Abramson, 634 F. Supp. 2d 1202, 1211 (D. Colo. 2008) (calling "absurd" the notion that "credit card holders who are unable to pay their debt need merely stop payment for 180 days, at which point—through the inexorable interplay of accounting and tax reporting requirements—such debts will automatically become taxable income and be extinguished"), Index Futures Group, Inc. v. Schmidt, 1997 WL 109978, at *6 (N.D. Ill. Mar. 7, 1997) (Coar, J.) (treatment of debt balance on customer statements reflective of internal bookkeeping and tax reporting practices, not implied waiver of debt), New Century Financial Services, Inc. v. Anarah, 2007 WL 1412112, at *1 (N.J. Super. May 15, 2007) ("judge properly determined that defendant owed the $3,895.50 due when the account was 'charged off,' plus the interest that had accrued on the account thereafter"); Unifund CCR Partners v. Urban, 2005 WL 3624541, *1 (Conn. Super. Dec. 8, 2005) ("no logical reason" to think notice from creditor reflecting account balance of

$0 as a result of charge-off meant consumer owed nothing; it was "simply transferring the account to an unpayable category, and turning the account over for collection").

Moreover, Plaintiff does not argue—because he cannot—that BOA was required to send him post charge-off statements for interest to continue to accrue. Plaintiff stops short of that conclusion. Instead, he appears to argue that periodic statements were required by alluding to the applicability of an amendment to Regulation Z (12 C.F.R. § 226.5(b)(2)) that was not even in effect at the time that his debt was charged-off. (Resp. 13-14.) He also looks to a Treasury Regulation as further support despite the fact that he "does not contend that any of the events constituting 'discharge' within 26 C.F.R. §§ 16050P-1 occurred." (Resp. 14.)

In fact, the state of the law at the time that Plaintiff's debt was charged-off relieved BOA from issuing periodic statements on an account "if the creditor deems it uncollectible, or if delinquency collection proceedings have been instituted." 12 C.F.R. §226.5(b)(2)(i). Notably, "uncollectible" was not specifically defined by the regulation, and contrary to Plaintiff's arguments, the courts interpreted that broadly and permitted creditors to continue to charge interest after charging off a debt without having to issue associated periodic statements. See Van Slyke v. Capital One Bank, 2007 WL 2385108, at *6 (N.D. Cal. Aug. 17, 2007).

Thus, it is clear that interest could continue to accrue post charge-off. Plaintiff concedes this fact in his Response and does not challenge CPS's right to charge contractual or statutory interest from the time that it acquired Plaintiff's debt (Resp. 8 at n.1). Rather, Plaintiff attempts to dilute CPS's right to collect (and ultimately reduce the amount he owes) by focusing upon a window of time between the date of charge-off and the date of

sale, and the unsupportable assumption that BOA waived interest merely because of the event of charge-off. Yet, as discussed below, Plaintiff fails to offer any specific facts evidencing BOA's intent to forever relinquish its right to collect (or assign its right to collect) lawfully accrued interest.

**II. Self-Serving Assumption that Interest Waived Not Supported by Allegations.**

Although Plaintiff acknowledges that "[i]mplied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver," he nevertheless contends that he has pled "concrete evidence" sufficient to construe "a waiver of post-charge off interest on [his] account between charge-off (January 2009) to sale of the account to CI [Cavalry Investments] in May 2011." (Resp. 5.) His story, which he bases on three "facts," does not "hold together." Here's why.

First, he claims that "[t]he amount of charge-off was $7,077" and cites Paragraph 50 and Exhibit C of the Complaint. Id. In Paragraph 50, Plaintiff alleges:

> On information and belief, credit card issuers report the charge-off amount to credit reporting agencies. Defendant Cavalry Investments, LLC reports an amount that includes interest for the period of time after charge-off and prior to sale of the account to a debt purchaser. This is the reason for the difference in amount between the two "tradelines" on Exhibit C. In both cases, the reporting is made to anyone who may see and use credit reports, including the consumer and other creditors.

Furthermore, Exhibit C likewise fails to state that "the amount of charge-off was $7,077." Rather, it appears to be an excerpt from Plaintiff's TransUnion Report which lists Plaintiff's BOA account and indicates a "High Balance" of $7,077 and a "Date Closed" of 01/2009. (See Compl. Ex. C.) Even if Plaintiff's account was charged-off at a balance of $7077, nothing in Exhibit C suggests that BOA was foregoing any future accrual of interest but seems to only

advise current and potential creditors that Plaintiff had a "High Balance" of $7077 at the time the account was closed in January 2009.

Next, citing Paragraph 17 and Exhibit A of the Complaint, Plaintiff claims that "[t]wenty-three months later, in December 2010, the amount BOA was seeking to collect on the account remained at $7,077.66." (Resp. 5.) Yet Paragraph 17 alleges that "[o]n or about December 9, 2010, Capital Management Services, L.P. sent plaintiff the collection letter attached as Exhibit A on behalf of Bank of America" and Exhibit A reflects a "balance" of $7,077.66. It does not state what comprises this "balance" nor does it contain any statements at all concerning the treatment of interest, retroactively or prospectively.[1]

For his third and final fact Plaintiff asserts that "[t]wenty-eight months after charge-off, at the time BOA sold the account to CI, the amount on the account remained $7,077.66." (Resp. 5.) For this proposition he cites Paragraph 25 and Exhibit C. However, Paragraph 25 states that:

> In May of 2011, Bank of America reported to Trans Union that the Debt was $7,077 (Exhibit C). Exhibit B, sent six months after Exhibit A and one month after Exhibit C, states that the amount of the debt is $10,828.28.

Again, Exhibit C only reflects that Plaintiff had a "High Balance" of $7,077 and that the account was closed in January 2009. It also reflects that CPS reported his debt with an "Original Balance" of $7,078. These two facts are consistent. What it tells Plaintiff is exactly what it states, and nothing more: that as of January 2009 when his BOA account closed he had a high balance of $7077 and that the balance had grown to $11,192 as then reported by the current holder of his account.

---

[1] And while Plaintiff has conveniently ignored the terms and conditions of his credit card agreement, if he examined it he would see that it provides that "[BOA's] failure to exercise any of [its] rights under this Agreement will not waive any of our rights in the future."

On their own or even pieced together, Plaintiff's three factual underpinnings fail to support even a hypothetical waiver. There are no allegations that BOA stated *to Plaintiff* that he was relieved from paying post-charge off interest. Plaintiff presents no authority for the proposition that BOA (and its assigns) would be forever bound to the amount of the debt at the time of charge-off or that BOA's internal bookkeeping and regulatory treatment of the debt at a certain time was an intention to forgive accruing interest. And indeed the opposite is true. Index Futures Group, Inc. v. Schmidt, 1997 WL 109978, at *6 (N.D. Ill. Mar. 7, 1997). Critically missing from Plaintiff's allegations is any "clear, unequivocal, and decisive act" by BOA evidencing its intent to waive that interest.

In an apparent attempt to bolster his theory, Plaintiff provides speculation as to the reasoning behind waiving certain accrued interest which he admits "is immaterial for purposes of resolving the motion to dismiss." (Resp. 6.) He further argues, without citation, that "the law probably required … banks to send monthly statements if they add fees or interest." (Resp. 6.) That is not the case. To the contrary, and as mentioned above, banks *were not* required to send post-charge off monthly statements to continue to charge interest. See Van Slyke v. Capital One Bank, 2007 WL 2385108, at *6 (N.D. Cal. Aug. 17, 2007) (no obligation to send billing statements on debt deemed "uncollectible" despite allegation that post-charge off interest).[2]

---

[2] To the extent this Court were to accept (which it should not) Plaintiff's argument that the FRB's commentary "clarified" that "uncollectible" is defined to mean "when a creditor has ceased collection efforts, either directly or through a third party" (Resp. 5), such construction should not be retroactively applied. See McPhillips v. Gold, 38 F. Supp. 2d 975, 980-981 (M.D. Ala. 1999) (rejecting retroactive application of FRB commentary that amounts to a substantive change). As even Plaintiff acknowledges, it was not until "its final 2010 regulations, [that] the FRB [] provided, for the first time, that banks could cease sending statements upon charge-off if, and only if, no interest or fees were added thereafter." (Resp. 14.) Thus, at a minimum, at the time that Plaintiff's account was charged off, BOA's duty to send post-charge of billing statements when it deemed a

Furthermore, Plaintiff's reliance on non-binding, distinguishable cases is misplaced. Specifically, Plaintiff relies upon In re 400 Walnut Assocs. LP, 461 B.R. 308 (E.D. Pa 2011). (Resp. 7). However, in that case, the court addressed whether an assignee may compound interest for a time that the assignor's monthly bank statements and annual loan statements for a 3½ year period did not reflect the imposition of such interest. Id. Here, Plaintiff does not claim that he received statements from BOA evidencing a decision *not* to charge him interest.

His reliance upon In re Crystal Properties, Ltd, 268 F.3d 743 (9th Cir. 2001), is also inapt. In that case, the court did not undertake any analysis of waiver at all. There, the court resolved the question of when a default interest rate may be applied by relying upon the "overwhelming weight of authority," and required an affirmative act to exercise the option to accelerate and, in turn, before the default interest rate could be effective. Id. at 750. Plaintiff's reliance upon Padilla v. Ghuman, 188 P.3d 653 (Colo. Ct. App. 2007), is distinguishable for the same reason. There, the court held that in order for an obligee to exercise his option to accelerate (and apply a default interest rate), he "must perform some clear, unequivocal affirmative act evidencing the obligee's intention to take advantage of the acceleration provision." Id. at 650.

By contrast here, Plaintiff does not contend that CPS applied an improper or inflated interest rate—instead, his complaint is that he is being charged exactly what he bargained for. Moreover, in both In re Crystal Properties and Padilla, the courts found that default interest could not be assessed absent some affirmative action taken by the assignee, however the opposite is true in this case. It is Plaintiff that has to show a "clear,

---

debt "uncollectible" was ambiguous. Therefore, Plaintiff's suggestion that he did not receive such statements can hardly be indicative of any clear, intentional waiver to charge interest.

unequivocal, and decisive act" by BOA to waive its right to collect interest. And as discussed above, he has not done so.

**III. Defendants Obtained the Right to Charge Lawfully Accrued Interest.**

Without satisfying the pleading threshold for waiver, Plaintiff attempts to cast CPS's right to charge post-charge off interest as beyond the rights it obtained from BOA. Plaintiff argues, "[i]f, as alleged here, the bank waives the interest between charge-off and sale of the account, the debt buyer cannot retroactively assess the interest that the bank waived." (Resp. 6.) Therein lies Plaintiff's problem—he has failed to sufficiently allege that BOA waived its right (or later assign its right) to charge accrued post-charge off interest. Indeed, his unsupported conclusion of waiver need not be accepted by this Court. See Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) (a court need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements). Thus, the dispositive issue becomes, where BOA *has not* exhibited a "clear, unequivocal, and decisive act" evidencing waiver, may CPS properly charge post charge-off interest? Assuming that the imposed interest rate is permissible under the contract (an issue which Plaintiff does not raise), the answer is yes.

That said, Plaintiff's pronouncement of assignment law is irrelevant—CPS is not attempting to enlarge the rights it acquired from BOA, but rather, is enforcing, to the fullest extent permissible under the law, exactly the rights it obtained.

**IV. Inclusion of Contracted for, Accrued Interest Does not Violate the FDCPA.**

Accordingly, Plaintiff's claim that CPS violated the FDCPA is meritless. His entire action is fundamentally flawed in that it assumes that the accrued interest is improper. Thus, all of his cited authority is distinguishable on this crucial point. See Police v. National

Tax Funding LP, 225 F.3d 379, 408 (3d Cir. 2000) ("state law specifically prohibits interest in excess of ten percent on the assigned claims"); Acik v. IC Systems Inc., 640 F. Supp. 2d 1019, 1024-27 (N.D. Ill. 2009) (unlawful interests and fees added to medical debt); Nance v. Ulferts, 282 F. Supp. 2d 912, 916-918 (N.D. Ind. 2003) (violations of state usury laws violated FDCPA); Sunga v. Rees Broome PC, 2010 WL 1138319, at *10-23 (E.D. Va. Aug. 12, 2010) (unlawful condominium assessments); Goins v. JBC & Assoc., P.C., 352 F. Supp. 2d 262, 269 (D. Conn. 2005) (collector inflated amount owed by improperly including maximum obtainable statutory damages that could be awarded); Crippen v. Stites, 346 B.R. 115, 120-121 (Bankr. E.D. Pa. July 25, 2006) (allegations that debt collector sought to collect amounts in excess of that allowed by law and the mortgage instrument); Maxwell v. Fairbanks Capital Corp., 281 B.R. 101, 119 (Bankr. D. Mass. July 16, 2002) (same). Because there has been no waiver of any portion of interest on Plaintiff's debt and the accrued interest was proper, his entire FDCPA action fails.

His alternate argument—that CPS was required to explain and itemize the principal and interest components of his debt—likewise misses the mark. (Resp. 10-11.) Plaintiff cites Fields v. Wilbur Law Firm, P.C., 383 F.3d 562 (7th Cir. 2004), for the proposition that "[o]ne simple way to comply with §1692e and §1692f … would be itemize the various charges that comprise the total amount of the debt" and argues that "Defendants made no effort to itemize the amount they were seeking to collect from Plaintiff." (Resp. 11.) However, unlike the Plaintiff's case here, the Fields court was discussing itemizing attorneys fees, not the amount of interest added. Fields, 383 F.3d at 565-566. Moreover, it has been held that "[t]he principal balance is not the debt; it is only part of the debt; the [FDCPA] requires statement of the debt." Miller v. McCalla, Raymer, Padrick, Cobb, Nichols,

& Clark, LLC, 214 F.3d 872, 875 (7th Cir. 2000). Thus, a debt collector is not required to break out principal and interest; it is enough to tell the debtor the bottom line. See Barnes v. Advanced Call Center Technologies, LLC, 493 F.3d 838, 840-841 (7th Cir. 2007); see also Hahn v. Triumph Partnerships, LLC, 557 F.3d 755, 756-757 (7th Cir. 2009) ("amount due" can include principal, interest, penalties, and other components; moreover, "principal" amount can include interest since "when interest is compounded, today's interest becomes tomorrow's principal").[3]

Nonetheless, Plaintiff now advances this already rejected argument—that Defendants itemize the amount they were seeking to collect from Plaintiff. (Resp. 10). Yet, under Barnes, Wahl, and Hahn, all Defendants had to do was state the amount they were seeking from Plaintiff, and that is exactly what they did. (See Ex. B and E of Plaintiff's Compl.) Thus, Plaintiff's FDCPA claim fails for this reason as well.

**IV. The Inclusion of Contracted for, Accrued Interest Does not Violate the ICAA.**

Similar to his deficient FDCPA claim, Defendant's allegations do not amount to a violation of the ICAA. This count fails since it is premised upon the same unsupported conclusion that BOA waived interest between the charge-off and sale of his account.

[3] In Wahl v. Midland Credit Management, plaintiff argued that the statement of his debt was false where a letter stated a "principal balance" that included interest charged by a prior owner of her debt. 556 F.3d 643, 645 (7th Cir. 2009). The court rejected this argument because "the interest charged by [the prior creditor] was very much part of the principal balance in Midland's [the assignee's] eyes." Id. at 646. The court noted that "[t]he defendant here is Midland—the debt collector, not the creditor—and that changes everything." Id. Ironically, in a case addressing the converse scenario, a plaintiff argued that a collection letter violated Section 1692e of the FDCPA where it itemized the principal and interest due since defendant acquired the account but failed to specify the interest that had accrued while the account was still owned by the original creditor. Hahn, 557 F.3d at 756-757. Again, the court rejected this claim and held that "classifying obligations in a way that helps customers to understand what has happened cannot be condemned as a false statement about a debt's character." Id.

Moreover, Plaintiff could not sustain this cause of action in any event because he failed to allege any actual damage. Contrary to Plaintiff's claim that he would "at the very least … be entitled to nominal damages, punitive damages" etc., without some allegation of actual damage, a private cause of action pursuant to the ICAA fails. McCabe v. Crawford & Co., 272 F. Supp. 2d 736, 751-752(N.D. Ill. 2003) (Castillo, J.). Hiring an attorney does not satisfy this standard. If it did, "every consumer who went to an attorney would be able to plead actual damages, frustrating the purpose for allowing the private cause of action in the first place: to allow a remedy only to those who have actually suffered from the debt collector's conduct." Id. Without actual damages, the ICAA simply does not apply.

**V. This Court Should not Award Plaintiff a Windfall.**

As a final argument in his Response, Plaintiff attempts to shift the focus from the fact that he is requesting the Court to relieve him from paying his debt according to the (conveniently un-alleged) terms of his credit agreement. He does not claim that CPS seeks anything beyond the amounts owed or that CPS charged a higher interest than that which he expressly agreed to. He points to speculative and irrelevant assertions regarding what Defendants paid for his debt which do not in any way affect how much Plaintiff, in fact, owes. Ironically, Plaintiff characterizes Defendants as "predators" who demand a return on their investment exceeding 3500% (Resp. 15), without acknowledging that it was because BOA was not getting *any* return on his account that it was sold in the first instance. What is more, Plaintiff is now trying to dilute Defendants' right to collect by capitalizing on his default. This argument should be rejected.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendants, Cavalry Portfolio Services, LLC and Cavalry Investments, LLC request that this Court enter an order dismissing Plaintiff's Complaint and any other relief the Court deems just and appropriate.

Respectfully submitted,

CAVALRY PORTFOLIO SERVICES, LLC and
CAVALRY INVESTMENTS LLC

By: /s Raechelle Delarmente Norman
One of its Attorneys

Anna-Katrina S. Christakis (ARDC #6242675)
Raechelle Delarmente Norman (ARDC #6292683)
Grady Pilgrim Christakis Bell LLP
53 West Jackson Boulevard, Suite 1515
Chicago, Illinois 60604
Ph. (312) 939-0953
Fax (312) 939-0983

**CERTIFICATE OF SERVICE**

Raechelle Delarmente Norman, an attorney, certifies that on March 8, 2012, she electronically filed the foregoing **Defendants' Reply in Support of its Motion to Dismiss**, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Daniel A. Edelman
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
dedleman@edcombs.com

Francis R. Greene
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
fgreene@edcombs.com

Cathleen M. Combs
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
ccombs@edcombs.com

James O. Latturner
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
jlatturner@edcombs.com

/s/ Raechelle Delarmente Norman