# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK TERECH,

                 Plaintiff,

       v.

FIRST RESOLUTION MANAGEMENT
CORPORATION, FIRST RESOLUTION
INVESTMENT CORPORATION, and
the LAW OFFICE OF KEITH S.
SHINDLER, LTD.,

             Defendants.

Case No 11 C 4076

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss Plaintiff's Corrected First Amended Complaint. For the reasons stated herein, the Court grants both Motions to Dismiss in part and denies them in part.

## I.  BACKGROUND

At the Motion to Dismiss stage, the Court accepts Plaintiff's well-pleaded factual allegations as true. Before 2004, Plaintiff Mark Terech had a credit card account with U.S. Bank. After he became delinquent in his payments, the account was charged off (removed from U.S. Bank's books) on August 31, 2004. At charge-off, U.S. Bank reversed a number of accrued fees, including some late fees and interest, reducing the charge-off amount to $2,475.87. U.S. Bank sent Plaintiff no additional account statements after the account was charged off.

U.S. Bank sold the debt to Unifund CCR Partners ("Unifund") on January 25, 2005, listing the value of the debt as $2,475.87.  The Bill of Sale attached to the Complaint, which purportedly governs that sale, states that U.S. Bank assigned (as-is) its:

> rights, title and interest in and to each of the assets identified in the Asset Schedule [not provided] . . . together with the right to collect all principal, interest or other proceeds of any kind with respect to the Assets remaining due and owing as of the date hereof . . . from and after the date of this Bill of Sale and Assignment of Assets.

Compl. Ex. C.

Defendant First Resolution Investment Corporation (with Defendant First Resolution Management Corporation, "First Resolution") allegedly purchased the debt on July 25, 2007, at which time the debt amount was still listed as $2,475.87.  (The purchase price was significantly lower, reflecting the risk of non-collection.  References to "face value" are accordingly understood to describe the amount of the delinquent debt as listed in the schedule of assets in each sale.)  First Resolution adjusted the amount owed by adding interest at a rate of 15.65%, dating back to the 2004 charge-off date, well before it owned the debt.

On March 11, 2009, the Law Office of Keith S. Shindler, Ltd. ("Shindler") filed a collection action on First Resolution's behalf in the Circuit Court of Cook County, seeking $4,385.80 (which included the principal, calculated interest, and $350.00 in legal fees).  Plaintiff was served on or around September 29, 2010.  It

appears to be undisputed that the lawsuit was barred by the statute of limitations; it was nonsuited in April 2011.

Plaintiff brings several claims on behalf of himself and putative classes of similarly situated consumers.  Count I alleges that the retroactive addition of interest violated the federal Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. § 1692 *et seq.*).  Count II is a similar claim under the Illinois Collection Agency Act ("ICAA," 225 Ill. Comp. Stat. 425/1 *et seq.*).  Count III seeks declaratory and equitable relief on the same theory.  Finally, Count IV is an individual ICAA claim, based on First Resolution's time-barred lawsuit.  Only Count I is brought against all defendants; the remainder are against First Resolution alone.  Defendants now seek to dismiss all counts.  The parties focus on Plaintiff's individual claims at this stage, and this Court accordingly defers questions regarding the viability of the proposed classes.

## II.  <u>LEGAL STANDARD</u>

On a Motion to Dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in Plaintiff's Complaint and draws all inferences in his favor.  *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Plaintiffs need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause

- 3 -

of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
(2007). "Naked assertion[s] devoid of further factual enhancement"
will not suffice – a complaint "must contain sufficient factual
matter, accepted as true, to state a claim to relief that is
plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50
(2009).

The FDCPA governs when and how debt collectors (those who buy
delinquent debts) may endeavor to collect from indebted consumers.
*See* 15 U.S.C. § 1692a. The statute broadly prohibits unfair or
deceptive conduct in debt collections. For example, debt
collectors may not use harassing or abusive conduct, 15 U.S.C.
§ 1692d, or unfair or unconscionable means, 15 U.S.C. § 1692f, to
collect a debt. Unconscionable means include collecting any amount
not authorized by law or the original debt agreement. The Act also
prohibits false, deceptive, or misleading representations in
connection with collecting a debt, including misrepresentations
about "the character, amount, or legal status of any debt," threats
to take any unlawful action, or empty threats. 15 U.S.C. § 1692e.
Under the statute, a "communication" to consumers is broadly
defined to include "the conveying of information regarding a debt
directly or indirectly to any person through any medium." 15
U.S.C. § 1692a(2).

A debt collector who fails to comply with the FDCPA with
regard to a consumer is liable to that consumer for the sum of:
(1) any actual damages; (2) statutory damages up to $1000 (or up to

- 4 -

$500,000 or 1% of the debt collector's net worth in a class action); and (3) attorneys' fees and costs.  15 U.S.C. § 1692k.

### III.  **DISCUSSION**

Both Defendants have moved to dismiss the Complaint, strenuously arguing that Plaintiff has alleged no unlawful conduct because First Resolution was entitled to collect interest dating back to 2004.  Because both Motions largely hinge on whether Plaintiff has adequately alleged that U.S. Bank and Unifund waived their rights to collect interest, the Court turns first to that question.

### A.  **Retroactive Addition of Interest**

Unifund and then First Resolution undisputedly stepped into the shoes of their respective assignors when they purchased Mr. Terech's debt, taking that debt subject to any existing waivers or defenses.  *See Olvera v. Blitt & Gaines, P.C.,* 431 F.3d 285, 288 (7th Cir. 2005); *Community Bank of Greater Peoria v. Carter,* 669 N.E.2d 1317, 1319 (Ill. App. Ct. 1996).  Under Illinois law, waiver is the intentional relinquishment of a known right, and can be implied if the party seeking to prove waiver shows that the waiving party took a "clear, unequivocal, and decisive act . . . manifesting an intention to waive its rights." *Pielet v. Hiffman*, 948 N.E.2d 87, 96 (Ill. App. Ct. 2011).

Plaintiff argues that First Resolution unlawfully sought to collect interest that U.S. Bank and Unifund had knowingly waived, which was both deceptive (§ 1692e) and unfair (§ 1692f).

- 5 -

Accordingly, Plaintiff's allegations are based on the FDCPA's standards and do not, as Defendants argue, seek impermissibly to convert a state-court defense into a federal claim. *Cf. Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473-74 (7th Cir. 2007)(Plaintiff sought to enforce other statutes through the FDCPA); *Washington v. North Star Capital Acquisition, LLC, No. 08 C 2823,* 2008 WL 4280139, at * 2 (N.D. Ill. Sept. 15, 2008)(no FDCPA violation for failing to meet state court procedural requirements).

Contrary to Plaintiff's assertions, however, merely pleading that "U.S. Bank waived" is, at this stage, essentially a legal conclusion that this Court need not accept. Accordingly, the critical question is whether Plaintiff has alleged sufficient facts, taken as true, to show that U.S. Bank and Unifund waived interest that otherwise would have accrued after charge-off, such that First Resolution likewise cannot collect that interest. Plaintiff presses two facts relating to waiver: (1) that the "face value" of the debt each time it was sold was the same as the amount at charge-off, and therefore that no interest had been added to it; and (2) that U.S. Bank sent Plaintiff no periodic statements after charge-off, which it should have done if interest was accruing.

Defendants object that Plaintiff's claims are insufficient to prove waiver, and that the right to collect interest was specifically preserved in the Bill of Sale. As set forth above, however, the Bill of Sale only assigns the right to collect amounts

- 6 -

"due and owing" arguably either at or after the transfer. Construing the facts and circumstances most favorably to Plaintiff, that assignment did not preserve the right to collect any interest waived by U.S. Bank, as such interest would not have been "due and owing."  The Court therefore considers whether Plaintiff has adequately alleged waiver under Rule 8.

### 1.  *Face Value of Loan*

Plaintiff alleges that the face value of the debt remained the same from the date of charge-off until First Resolution acquired it, which necessarily means that neither U.S. Bank nor Unifund added interest to the amount due.  (First Resolution's argument that U.S. Bank would have zeroed out any interest on its accounting books when U.S. Bank sold the debt is irrelevant — the question is whether it added the interest in the first place, not how its accountants handled the sale.)  Plaintiff offers detailed allegations about what banks commonly do — waiving interest on charged-off accounts to minimize the amount of "bad debt" on their books — but does specifically allege that U.S. Bank has such a policy. Therefore, those allegations, taken as true, establish (at most) U.S. Bank's incentive to waive interest, and not its actual practice.  All together, Plaintiff's allegations may not be sufficient to carry the day at trial, as they say nothing about the prior holders' actual policies.  However, the allegations are sufficient to create more than "a sheer possibility" that any interest was waived. *Iqbal*, 129 S. Ct. at 1949.

Defendants argue that the statement which U.S. Bank sent to Plaintiff when it charged off his account defeats any claim of waiver, because it specifies that interest will continue to accrue. Compl. Ex. D. However, drawing all inferences in Plaintiff's favor, such boilerplate only indicates that the waiver, if it occurred, was knowing – that U.S. Bank knew that it could still collect interest, but chose not to.

## 2. *Absence of Periodic Statements*

Plaintiff alleges that U.S. Bank did not send him any periodic statements after charging off his account. This is significant, he argues, because in 2004 the Truth In Lending Act (the "TILA") regulations required the bank to send him a billing statement until it deemed the account "uncollectible," at which point it would no longer be adding interest to the balance; the lack of statements thus would indicate an absence of new interest charges. (The duty to send periodic statements did not extend to subsequent debt purchasers like Unifund. *Neff v. Capital Acquisitions & Management Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003).)

In 2004 and 2005, TILA's Regulation Z required credit card creditors to send periodic statements to account holders for any billing cycle in which the account had a balance of more than one dollar or in which the creditor added a finance charge (such as interest). 12 C.F.R. § 226.5(b)(2)(i)(2005); 12 C.F.R. Pt. 226, Supp. I (2004); 12 C.F.R. § 226.4(b)(defining "finance charge" to include interest). At that time, a creditor did not have to send

- 8 -

statements if: (1) if sending one would have violated federal law; (2) delinquency collection proceedings had been instituted; or (3) it had deemed the account uncollectible. *See* 12 C.F.R. § 226.5(b)(2)(i)(2005). All parties assume that U.S. Bank stopped sending Plaintiff statements under the "uncollectibility" prong. Effective July 1, 2010, the regulation was clarified to explain that a creditor has deemed an account "uncollectible" when it stops trying to collect on it. 74 Fed. Reg. 5244, 5276 (January 29, 2009). Where a regulation has been merely clarified after the events at issue in a case, a court may apply the regulation as clarified. *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 979 (7th Cir. 2004).

While earlier cases equated charge-off and uncollectibility, the clarification rejects that result and the cases adopting it, like *Van Slyke v. Capital One Bank*, 2007 WL 2385108, at *6 (N.D. Cal. 2007), are no longer persuasive. *Van Slyke* relied on the Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903, 36904 n. 1 (June 12, 2000), which connects charge-off to a credit classification of "loss" — when an asset is considered uncollectible or of insufficient salvage value to warrant keeping it on the books. *Id.* at n.1. The Policy also noted, however, that banks need not adopt an identical classification system. *Id.* Section 226.5, by contrast, has always focused on what the *creditor* actually deems uncollectible. Finally, if charge-off and uncollectibility were identical, the

- 9 -

2010 amendment to § 226.5 (which allows creditors to stop sending periodic statements if an account has been charged off and no interest has been added) would have been entirely superfluous.

Accordingly, the 2004 regulation did not permit a creditor to automatically stop sending statements after charge-off.  Still, it is difficult to see what the discontinued statements add to Plaintiff's waiver argument.  Plaintiff argues that the determination of uncollectibility is important because adding interest to the account would have indicated that U.S. Bank deemed the account collectible, pointing to an IRS regulation relating to disclosure of discharge of indebtedness income.  26 C.F.R. § 1.6050P-1.  However, Plaintiff has identified no authority for construing § 226.5 by reference to § 1.6050P-1, and this Court has found none.  *Cf. Murray v. Citibank (S.D.), N.A.*, No. 04 C 3294, 2004 WL 2367742, 2 (N.D. Ill. Oct. 19, 2004)(account became uncollectible in 1991, but was not "charged off to the IRS" until 1992); *Kelly v. Wolpoff & Abramson, LLP,* 634 F.Supp.2d 1202, 1210 (D. Colorado 2008)(noting that charging off a debt is not equivalent to a discharge under the income tax regulations).  Thus, periodic statements (or lack thereof) add nothing to the inquiry into whether U.S. Bank applied interest to Plaintiff's account after August 2004.  However, as the Court noted above, Plaintiff's allegations regarding waiver were already sufficient to survive a motion to dismiss.

## B. § 1692e

Having concluded that Plaintiff has adequately alleged waiver in support of his FDCPA claim, the Court turns to Shindler's additional challenges to Count I. Most of Shindler's objections are necessarily dispensed with under the analysis above, or amount to attacks on the merits, and need not detain us long. There are, however, two arguments relating to § 1962e buried in his brief that merit further consideration. The first is that the statements in the state court complaint were immaterial and therefore not misleading, because however much interest was claimed on a genuine debt would not affect a consumer's behavior; the second is that a state court complaint does not amount to a false representation within the meaning of the statute.

First, the Court disagrees that the alleged misrepresentation is immaterial. The Seventh Circuit explained the materiality requirement in *Hahn v. Triumph Partnerships LLC,* 557 F.3d 755, 757-58 (7th Cir. 2009). There, it rejected as immaterial the allegedly misleading practice of listing both the principal and interest due in one line, rather than listing them separately. The court stressed that "a dollar due is a dollar due," and that combining principal and interest onto one line harmed no one, unlike, for example, applying the wrong interest rate could. *Id.* at 757. The allegedly false representation here — that First Resolution was entitled to collect the interest dating back to 2004 when it was not — is closer to the hypothetical application of the incorrect

- 11 -

interest rate that it is to the challenged practice in *Hahn*. Simply put, it substantially changes the amount allegedly due. Accordingly, the Court finds that the allegedly misleading statements were material.

The Court likewise disagrees that the state court complaint cannot amount to a false representation of the character, amount, or legal status of Plaintiff's debt. The Seventh Circuit has declined to rule on whether complaints filed in state court, in the sense that they communicate with the consumer, can violate the FDCPA. *See O'Rourke v. Palisades Acquisition XVI, LLC.,* 635 F.3d 938, 941 n.1 (7th Cir. 2011). Although the Seventh Circuit has expressed skepticism of such claims, *see Beler,* 480 F.3d at 473, courts in this District have nonetheless repeatedly held that where, as here, the allegations appear to fit precisely into the FDCPA's prohibition against misrepresenting "the character, amount, or legal status of any debt," such state court complaints are covered by the statute. *See Berg v. Blatt, Hasenmiller, Leibsker & Moore*, No. 07 C 4887, 2009 WL 901011, at *5-6 (N.D. Ill. March 31, 2009)(collecting cases). Accordingly, the Court finds that the allegation that Defendants misrepresented their legal entitlement to collect waived interest, which would necessarily then misrepresent the amount of debt, states a claim under § 1692e.

## C. § 1692f

Shindler also argues that Plaintiff has not shown an unfair or unconscionable means of collecting that under § 1692f. He first

argues that the mere filing of a lawsuit is not oppressing or harassing. However, his argument and the cases he cites interpret § 1692d, not § 1692f, and are therefore inapposite.

Next, Shindler argues that there is no evidence that he knew of any waiver. Several provisions of the FDCPA predicate liability on knowing violations, *see* § 1692c(a)(2), but § 1692f does not appear to be among them. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Section 1692k(c) creates an affirmative defense to civil liability if a debt collector shows that the FDCPA violation was a *bona fide* error that escaped the collector's reasonable procedures. Nothing in Rule 8, however, requires Plaintiff to anticipate such an affirmative defense and overcome it in his complaint.

Finally, Shindler argues that because the credit card agreement provided for interest charges, Plaintiff cannot show any attempted "collection of any amount (including any interest[)]" not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1). The Court agrees that § 1692f(1) appears to be directed at debt collectors who charge fees not contemplated *by the original agreement*, not debt collectors who seek to charge fees contemplated by the agreement but arguably waived thereafter. *See Transamerica Financial SVS, Inc. v. Skyes,* No. 97 C 2568, 1998 WL 325231, at *3 (N.D. Ill. June 10, 1998). Accordingly, Plaintiff has not stated a claim

- 13 -

specifically under § 1692f(1), but has stated one under the more general provision of § 1692f.

### D.   Damage Claims under the ICAA and FDCPA

Defendants challenge whether Plaintiff adequately pled damages under either the ICAA or the FDCPA, because, although he appeared to defend the suit, it was dismissed without his having to pay the debt or any interest.   Shindler argues that under the FDCPA, a plaintiff must show actual damages before statutory damages may be awarded.   This is incorrect.   *See Anderson v. Credit Bureau Collection Servs., Inc.,* 422 Fed.Appx. 534, 536 (7th Cir. 2011) (aggrieved consumers may recover actual *or* statutory damages).

First Resolution makes a stronger argument under the ICAA. Reviewing courts in Illinois appear not to have addressed whether actual damages are required under the ICAA; however, several district courts have found that they are.   *See Grant-Hall v. Cavalry Portfolio Services, LLC*, --- F.Supp.2d ---, 2012 WL 619651, at *8 (N.D. Ill. 2012).   Although some of those decisions found that attorney's fees cannot qualify as actual damages, having to pay an appearance fee has been deemed to constitute sufficient damage.   *See id.* (citing 705 Ill. Comp. Stat. 105/27.2(e) and 705 Ill. Comp. Stat. 105/27.2a(e)).   Accordingly, in alleging that he "disputed the debt and defended the state court lawsuit," Compl. at ¶ 51, Plaintiff alleged actual damages.

First Resolution further argues, however, that Plaintiff's having to appear and defend the case is not an injury specific to

- 14 -

the harm alleged here — the allegedly unlawful addition of
retroactive interest.  (Plaintiff did not respond to this argument
in his surreply.)  There is a certain perversity in the argument
that Plaintiff suffered no damage by the allegedly unlawful
addition of interest, because he already had to appear to contest
the suit as time-barred.  That issue aside, however, the Complaint
does not adequately allege an injury specific to the purportedly
unlawful addition of interest under Count II.  Accordingly, the
Court dismisses Count II without prejudice.

### E.  Availability of Declaratory Relief

First Resolution argues that Plaintiff is not entitled to
declaratory relief in Count III, noting that it is within this
Court's discretion to deny declaratory relief where the governing
statute offers more complete remedies.  In attacking the necessity
and relevance of declaratory relief, however, First Resolution
largely ignores Plaintiff's additional request for injunctive
relief.  Without citing to a statute, Plaintiff asks this Court to
declare First resolution's actions "unlawful."  It is unclear by
what metric Plaintiff would have the conduct evaluated, except the
FDCPA and ICAA.  Injunctive relief is not available to private
litigants under the FDCPA.  *Zanni v. Lippold*, 119 F.R.D. 32,
34 (C.D. Ill. 1988).  Neither party has addressed whether
injunctive relief is available under the ICAA, but this Court has
already dismissed the ICAA claim.  Accordingly, in light of the
comprehensive damages scheme under the FDCPA and the unavailability

- 15 -

of civil injunctions under that statute, this Court dismisses Count III without prejudice.

### F. Statute of Limitations

On December 16, 2011 the Court sought supplemental briefing from the parties as to whether this action was time-barred under the FDCPA's one-year statute of limitations, given that the state-court suit was filed in 2009. *See* 15 U.S.C. § 1692k(d)(FDCPA claims must be brought within one year of the violation). There is no dispute that the lawsuit was filed in 2009, but was not served upon Plaintiff until September 2010. Compl. Ex. A.

There is a split of authority over whether the filing of a debt collection lawsuit or its service on the consumer starts the clock for FDCPA purposes. *Compare Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997)(concluding that time begins to run on the date that the lawsuit is filed) with *Johnson v. Riddle,* 305 F.3d 1107, 1113 (10th Cir. 2002)(statute begins to run upon service). *See also, Judy v. Blatt, Hasenmiller, Leibsker and Moore LLC,* No. 09 C 1226, 2010 WL 431484, at *3 n.1 (N.D. Ill. Jan. 29, 2010)(noting the split). The Court concludes that, as between the date of filing in the date of service, the clock ran in this case from the date of service. (Whether the statute of limitations did not begin to run until then, or the limitations period was equitably tolled until Plaintiff was served, *see Kubiski v. Unifund CCR Partners,* No. 08 C 6421, 2009 WL 774450, at * 2 (N.D. Ill. Mar. 25, 2009) the result is the same.) However, the Court's conclusion that the

- 16 -

substantial gap between filing and service did not render this lawsuit untimely does not mean that Defendants may not re-raise the limitations issue at a later date if they obtain evidence that Plaintiff had earlier notice of the allegedly unlawful interest charges.

## IV.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.    Denies the Motions to Dismiss Count I as to all but the claim under § 1692f(1);

2.    Grants the Motions to Dismiss Count II without prejudice; and

3.    Grants the Motions to Dismiss Count III without prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 4/12/2012

- 17 -

# EXHIBIT B

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MICHIGAN
 2                      SOUTHERN DIVISION

 3                        —   —   —

     DAVID-JOHN MCDONALD, ET AL.,
 4
                  Plaintiffs,
 5
        vs.                          Case No. 11-13080
 6
     ASSET ACCEPTANCE, L.L.C.,       Hon. Marianne O. Battani
 7
                  Defendant.
 8   _____/

 9
          MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
10
              BEFORE THE HONORABLE MARIANNE O. BATTANI
11                  United States District Judge
               Theodore Levin United States Courthouse
12                 231 West Lafayette Boulevard
                        Detroit, Michigan
13                 Thursday, March 8, 2012

14
     APPEARANCES:
15
     For the Plaintiff:   CATHLEEN M. COMBS
16                        Edelman, Combs, Latturner &
                          Goodwin, L.L.C.
17                        120 S. LaSalle Street, Suite 1800
                          Chicago, IL 60603
18                        (312) 739-4200

19                        ADAM G. TAUB
                          Adam G. Taub & Associates Consumer Law
20                        Group, P.L.C.
                          17200 W. Ten Mile Road, Suite 200
21                        Southfield, MI 48075
                          (248) 746-3790
22

23

24      To obtain a copy of this official transcript, contact:
             Robert L. Smith, Official Court Reporter
25         (313) 964-3303 • rob_smith@mied.uscourts.gov
```

```
 1   APPEARANCES:  (Continued)
     For the Defendant:     THEODORE W. SEITZ
 2                          Dykema Gossett, P.L.L.C.
                            201 Townsend Street, Suite 900
 3                          Lansing, MI 48933
                            (517) 374-9100
 4
                            ROBERT M. HORWITZ
 5                          Asset Acceptance, L.L.C.
                            28405 Van Dyke Avenue
 6                          Warren, MI  48093
                            (586) 983-7684
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

TABLE OF CONTENTS

                                                    Page

Motion by Mr. Seitz................................  5

Response by Ms. Combs.............................  8

Reply by Mr. Seitz................................ 14

Ruling by the Court............................... 15

Motion to Dismiss - March 8, 2012

4

```
 1   Detroit, Michigan
 2   Thursday, March 8, 2012
 3   at about 2:24 p.m.
 4                              _   _   _
 5           (Court and Counsel present.)
 6           THE LAW CLERK:  All rise.
 7           The United States District Court for the Eastern
 8   District of Michigan is now in session, the Honorable
 9   Marianne O. Battani presiding.
10           You may be seated.
11           THE COURT:  Good afternoon.
12           MS. COMBS:  Good afternoon.
13           THE COURT:  All right.  This is McDonald vs. Asset
14   Acceptance.  May I have your appearances, please?
15           MS. COMBS:  Good afternoon, Your Honor.
16   Cathleen Combs on behalf of plaintiffs.
17           MR. TAUB:  Good afternoon, Your Honor.  Adam Taub
18   on behalf of plaintiffs.
19           MR. SEITZ:  Good afternoon, Your Honor.  Ted Seitz
20   on behalf of the defendant.
21           MR. HORWITZ:  Rob Horwitz on behalf of Asset.
22           THE COURT:  Okay.  This is defendant's motion to
23   dismiss under Rule 12(b)(6).
24           MR. SEITZ:  Thank you, Your Honor.
25           THE COURT:  You may proceed.  If you want to turn
```

1  that podium around -- if you just want to straighten it, I

2  should say, feel free.

3          MR. SEITZ:  Thank you, Your Honor.

4          THE COURT:  Okay.

5          MR. SEITZ:  We are here on Asset's motion to

6  dismiss plaintiffs' amended complaint.  In that amended

7  complaint the plaintiffs' claims hinge on the allegations

8  that their original creditors waived the right to collect

9  post chargeoff interest on their credit card debts.

10         THE COURT:  So as I understand it there is a debt

11 at the bank and they charge it off at a particular point in

12 time and then another company, Asset, comes in and acquires

13 it?

14         MR. SEITZ:  They do, Your Honor, after chargeoff.

15         THE COURT:  After chargeoff, and then they add the

16 interest back in from the date of chargeoff to what, until --

17         MR. SEITZ:  Until when they collect on it, Your

18 Honor, the interest is running.

19         THE COURT:  Okay.

20         MR. SEITZ:  That's exactly the claim, but each of

21 the plaintiffs in this case have a different original

22 creditor, a different bank.  I think it is important to focus

23 on also what is not in the amended complaint, which is really

24 any evidence -- any specific fact that any of these banks

25 waived their right to interest, and under Michigan law, as

1  also confirmed by the Sixth Circuit, a waiver is a voluntary

2  and intentional abandonment of a known right.  We don't have

3  a letter from a bank saying that they waived their right to

4  interest.  We don't have any agreements from banks saying

5  they waived their right to interest.  The one agreement we

6  did attach is related to the Havlena related matter, Your

7  Honor, and that agreement actually specifically states that

8  they do not waive their right to interest and will keep

9  charging interest even after chargeoff.

10           THE COURT:  But that's a different case, that's --

11           MR. SEITZ:  It is a different case, Your Honor.

12  Arguably they would be a member of this punitive class.  As

13  you recall, we were here on Havlena and went to arbitration,

14  but Mr. Havlena would also be part of this potential class

15  the way plaintiffs have pled it, and they have also attached

16  a copy of a letter in their response brief from my client

17  talking about the Havlena case and believe that it shows some

18  support for their broad assertion that the practice in the

19  bank industry is that interest is not going to be charged

20  after a chargeoff.

21           THE COURT:  But we are not talking here about the

22  ability to certify the class yet?

23           MR. SEITZ:  We are not, Your Honor.

24           THE COURT:  That's a different issue.

25           MR. SEITZ:  Because it is a motion to dismiss and

 1    obviously things outside of the pleadings there are limits on

 2    that, but that's one item that we brought in specifically in

 3    a related case that shows that, hey, that particular bank,

 4    you know, look at the agreement, that's what we have,

 5    certainly says that they are not going to stop charging

 6    interest, so really we have --

 7         THE COURT:  But all you can say for that is you

 8    have one bank that is not going to charge interest?

 9         MR. SEITZ:  Right, and they have nothing in their

10    complaint that shows that banks ever waived any right to

11    charge the interest.  The only thing they really have are the

12    regulations.

13         THE COURT:  Right, but that particular bank, I

14    mean, is not in this unless it becomes a member of the class?

15         MR. SEITZ:  That is true, Your Honor.

16         THE COURT:  So no bank has waived at this point

17    that we know of.

18         MR. SEITZ:  That we know of?  I haven't seen

19    anything, a letter, anything even from the plaintiffs, an

20    agreement, nothing about waiver.  It appears that the best

21    that they are offering is some regulations under the Truth in

22    Lending Act about the sending of statements and saying that

23    you waive your right to interest if you don't send statements

24    anymore.  And the specific regulation that would cover these

25    plaintiffs didn't have that provision in it that they believe

```
 1    they now rely upon, and as we put forth in our brief, even
 2    the current provision, it has been amended, doesn't support
 3    their claims.
 4          So with that, Your Honor, there is really no
 5    showing, no pleading at all of any facts showing any waiver,
 6    which really is essential to their claim, and even taking
 7    their regulations as true, the regulations that would apply
 8    to these particular plaintiffs, which is undisputed, would
 9    not waive any interest or show any waiver of interest on the
10    part of the original creditors, so with that, Your Honor, I
11    will sit down.
12          THE COURT:  Okay.  Thank you.
13          MR. SEITZ:  Thank you.
14          THE COURT:  Ms. Combs?
15          MS. COMBS:  Good afternoon, Your Honor.
16          The first thing I would like to bring up is in
17    their reply brief Asset pointed to one of our cases in the
18    circuit court in Will County, Illinois, the Asset vs. Wagner,
19    pointing out that it had been dismissed, but that was half
20    the story.  In fact, it was dismissed and this is not a fact
21    pleading jurisdiction, the state courts in Illinois, it was
22    dismissed with leave to replead and we have re-pled, so that
23    case is still pending contrary to the impression that was
24    given in their reply, and I do have both the order and the
25    amended pleading if the Court would like me to tender those?
```

1        THE COURT:  No.  You are talking about the Illinois

2    state court, and I don't really care.

3        MS. COMBS:  Okay.  Now, I think it is important

4    here to focus on the fact that defendants assert in the very

5    first paragraph of their brief that it is untrue that

6    defendant cannot collect interest on purchased debt accrued

7    after chargeoff but before actual purchase.  The defendant

8    cites no authority to support this position and, in fact,

9    this kind of practice has been characterized as being

10   extraordinary conduct.

11       In that 400 Walnut Association case that we cited

12   the court addressed a similar issue and found the practice of

13   retroactively charging interest that the prior creditor had

14   not as being avaricious and highly improper.  So contrary to

15   the assertion that the defendants made in their first

16   paragraph they have cited no authority saying that they can,

17   and we have cited authority that says, including the

18   Ninth Circuit, that says no, you cannot, it is not proper for

19   them to do it.

20       Now, if there is waiver and again going to that

21   400 Walnut Association, what do we have here?  The defendants

22   are focusing on the -- we have alleged in the complaint that

23   there was waiver, and to support that we point out that in

24   each of the instances, the three different plaintiffs, there

25   was no interest charged after chargeoff.  And there -- it is

1   in the complaint, there are various ways of showing that,

2   that the amount that was sold is the amount that was charged

3   off, and we also have this letter where Asset's counsel says

4   yeah, that's what we were doing, we were taking an amount

5   that we purchased and adding interest but not beginning when

6   we purchased it but when it was charged off, and there -- so

7   there is no question about the practice.

8          So instead of focusing on that, what the defendants

9   are focusing on is the justifications that we alleged why

10  banks do this and --

11         THE COURT:  So is the issue really is there a

12  waiver when they charged off, is there a waiver at that

13  point?

14         MS. COMBS:  At that point, and the real question

15  is -- this is a motion to dismiss and we don't have to prove

16  there was a waiver, we don't have to come up with the letter

17  at this point, we are entitled to discovery.

18         THE COURT:  Have you alleged that there is a

19  waiver?

20         MS. COMBS:  We have alleged that there was a waiver

21  and in support of that we put a whole lot of, you know, in

22  effect the facts that we rely on.  The fact that almost all

23  banks except for Capital One actually do not charge after --

24  do not charge interest after chargeoff, the reason being that

25  it increases the amount of their bad debt and it is not in

```
 1    their interest.  That's one basis that we put for the
 2    conclusion that they waived it.  Defense didn't attack that.
 3             THE COURT:  What did you put in your complaint, I
 4    don't --
 5             MS. COMBS:  All right.
 6             THE COURT:  -- remember the actual statement here?
 7             I have the amended complaint, I know that it
 8    was Exhibit A.
 9             MS. COMBS:  Well, those basically --
10             THE COURT:  That's the counterclaim, I'm wrong, I'm
11    sorry.
12             MS. COMBS:  I think what you want to look at -- I
13    actually put this in my notes somewhere.
14             THE COURT:  Just tell me what it is, what your
15    paragraph says.  I don't have your --
16             MS. COMBS:  The factual allegations on page 6, we
17    say it is, well, the policy and practices of Asset to add
18    interest, the banks from which Asset allegedly purchased
19    debts intentionally did not charge interest after chargeoff,
20    most of the debts which defendant seeks to collect are credit
21    card debts originally issued by the banks, standard form
22    agreements used by banks provided they may change the terms
23    from time to time, as a standard practice and for a variety
24    of sound business reasons most banks waive interest on credit
25    card debts after chargeoff for as long as the debts are held
```

1    by the bank, and then we listed the reasons.

2              And what this motion seems to take issue with is

3    one of the reasons that we listed, and that was the whole

4    question of whether or not the bank has to send a credit card

5    or a bill -- a billing statement after chargeoff if they

6    don't charge interest and whether that is a motivation for

7    the banks.  And really the drama of their motion to dismiss

8    is on this justification when, in fact, what we have

9    alleged -- and I would point the Court to again the

10   400 Walnut Association, and what that court said is a

11   commercial lender is certainly presumed to be aware of its

12   rights with regard to the accrual of interest, but in this

13   case it was a question of compounding interest, they didn't

14   charge the interest.  The assignee stands in the shoes of

15   assignor but its rights rise no higher than the bank's, and

16   the court found waiver in this factual assertion.  So what

17   the defendants --

18             THE COURT:  So if the bank -- if the bank waives

19   and then the other company, Asset in this case, become the

20   assignee, if they stand in the shoes of the bank they can't

21   change their mind after they buy it?

22             MS. COMBS:  Well, they stand in the shoes as of the

23   date that they purchase it, not before.

24             THE COURT:  Right.

25             MS. COMBS:  And as the court in this 400 Walnut

1    case said, it is highly improper and avaricious for them to

2    go back and collect this interest prior to buying the debt.

3    And in this case they bought the debts for three cents on the

4    dollar, a very small amount.  They are going to get 2,000

5    percent, they want 3,000 percent, and it is just not proper.

6              THE COURT:  Okay.

7              MS. COMBS:  So the bottom line here, Your Honor, is

8    that we believe that we have adequately pled waiver, we are

9    entitled to do discovery in order to prove waiver, and the

10   defendants have cited nothing that shows that what they are

11   doing is proper.

12             And just one additional point, that is the letter

13   that they -- that they talk to -- or, no, the contract where

14   they say oh, the contract -- the credit card contract allows

15   the bank to charge the interest.  The point here is whether

16   they had the right to charge interest, and all of these banks

17   did have the right to charge interest, they didn't so that

18   really the contract -- the credit card contract is not

19   telling in this instance.  We have alleged and can show in

20   each of these instances that the banks were not charging --

21   were not charging interest after chargeoff and Asset should

22   not be permitted to.

23             THE COURT:  All right.

24             MS. COMBS:  Thank you.

25             THE COURT:  Reply?

```
 1        MR. SEITZ:  Just briefly, Your Honor.  The argument
 2  still hinges on some alleged waiver that they have shown
 3  nothing -- alleged nothing occurred and everything hinges on
 4  the banks supposedly waiving something but we don't know how
 5  or when or if they ever waived it or not, and the fact that
 6  they may not have charged interest after chargeoff doesn't
 7  mean that they certainly didn't have the right to do so, and
 8  it certainly shows or alleges any type of intentional waiver
 9  on their part not to do so later on with their options.  So
10  with that, Your Honor, I have nothing further unless the
11  Court has any questions?
12        THE COURT:  No.
13        MR. SEITZ:  Thank you, Your Honor.
14        THE COURT:  All right.  The Court notes that this
15  is here under a 12(b)(6) motion, and we know that an assignee
16  holds the property subject to the rights of the assigner, we
17  just had a discussion on that, and the issue is the waiver,
18  whether the bank actually waived their right to interest.
19  Clearly they had the right to interest, the issue is whether
20  they waived it, and if they did waive it then can the
21  defendant reinstate it even though it stands in the shoes of
22  its assigner at the time of the purchase.
23        And the Court notes that plaintiff in its complaint
24  while maybe not absolutely clearly stating that the banks
25  waived their right to interest, there is certainly sufficient
```

1    allegations in the amended complaint when viewed in a light

2    most favorable to the plaintiff that allows the inference

3    that the original credit holders waived their right to

4    interest, and therefore when the defendant included that

5    interest it violated the FDCPA.

6           So it appears to me that under 12(b)(6) standards

7    the case should not be dismissed and should be continued, and

8    the Court will allow it to continue.

9           Do you have a scheduling order?

10          MR. SEITZ:  We do not.

11          MR. TAUB:  Not yet.

12          THE COURT:  Do you want to talk about it now while

13   you're here?

14          MR. SEITZ:  Sure.

15          MR. TAUB:  Sure.

16          THE COURT:  This is off the record.

17          (An off-the-record discussion was held at

18          2:40 p.m.)

19          THE COURT:  How about ending discovery June 8th,

20   would that be sufficient?

21          MS. COMBS:  Hopefully.

22          THE COURT:  We will send you a standard scheduling

23   order, your witness list will be due about a month before

24   that.

25          How about then your motions -- your motion to

1    certify would be refiled when?

2            MR. TAUB:  Well, maybe 30 days after the close of

3    discovery.

4            MS. COMBS:  Yeah.

5            THE COURT:  Okay.  Let's say July 6th.  You may

6    also have dispositive motions, defense may have some

7    dispositive motions to file.

8            MR. SEITZ:  Yes, yes, Your Honor, yes.

9            MR. HORWITZ:  Your Honor, both as to the merits as

10   well as to the class certification allegations under the

11   Pilgram Sixth Circuit decision.

12           THE COURT:  Yes.

13           MR. SEITZ:  Which allows a motion to strike if we

14   want.

15           MR. TAUB:  One of the concerns that we have

16   since -- I am not sure we are prepared to do a Rule 16

17   conference, Your Honor, is -- and one of the things that

18   counsel brought up too is that some of our discovery as the

19   court can imagine is not going to come from Mr. Seitz or

20   Mr. Horwitz, and we are going to be probably having to get

21   documents from third parties, the banks and credit card

22   companies.  So I am thinking that I misspoke when I said that

23   90 days would be sufficient.  I know it would be sufficient

24   because our offices work well together, but we might need

25   some more time than 90 days to get these other documents that

1   we are going to need.

2          THE COURT:  How about if we put it to the end of

3   July?

4          MR. TAUB:  Thank you.

5          THE COURT:  Let's make it July 27th.

6          MR. SEITZ:  Your Honor, I think before we do that,

7   one thing, I just want to be up front, I'm pretty sure that

8   we have an intention to file a motion to strike class

9   certification in this case based upon the Pilgrim case from

10  the Sixth Circuit Court of Appeals because I believe even

11  before we -- before they even file a class certification

12  motion that the way the complaint is pled and the way the

13  class lines up is that we can file a motion to strike the

14  case at the outset and get rid of the class allegations.

15         THE COURT:  You could file any motions you want up

16  until your motion filing deadline.

17         MR. SEITZ:  Okay.  So we are not precluded is what

18  you're saying?

19         THE COURT:  No, absolutely not.  It is just that

20  your motions to certify the class, this would be plaintiffs'

21  motions, would then have to be filed by August 24th, and any

22  dispositive motions by defendant I'm going to put that same

23  date, all right.  So all motions to be filed at the latest

24  August 24th, they can be filed earlier obviously, but not

25  later, and then we will give you -- we will send out a

Motion to Dismiss - March 8, 2012

```
1   scheduling order -- when we get the motion we will send out
2   an order for the motion scheduling, the briefing.
3            MS. COMBS:  Sounds good.
4            MR. TAUB:  Thank you, Your Honor.
5            THE COURT:  Anything else?
6            MR. SEITZ:  Thank you, Your Honor.
7            THE COURT:  Okay.  Then I don't know if you got any
8   notice of a scheduling conference but I will ask my clerk to
9   dismiss it because since we have done this we'll file this
10  order electronically.
11           MS. COMBS:  Sounds great.  Thank you very much,
12  Your Honor.
13           THE COURT:  The Court will enter the order.
14           (Proceedings concluded at 2:47 p.m.)
15                         _    _    _
16
17
18
19
20
21
22
23
24
25
```

1                               *CERTIFICATION*

2

3               I, Robert L. Smith, Official Court Reporter of

4       the United States District Court, Eastern District of

5       Michigan, appointed pursuant to the provisions of Title 28,

6       United States Code, Section 753, do hereby certify that the

7       foregoing pages comprise a full, true and correct transcript

8       taken in the matter of David-John McDonald, et al., vs. Asset

9       Acceptance, L.L.C., Case No. 11-13080, on Thursday, March 8,

10      2012.

11

12

13                              *s/Robert L. Smith*
                                _____
14                              Robert L. Smith, RPR, CSR 5098
                                Federal Official Court Reporter
                                United States District Court
15                              Eastern District of Michigan

16

17

18      Date:  04/11/2012

19      Detroit, Michigan

20

21

22

23

24

25