UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN SIMKUS, on behalf of himself and the classes described herein, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-cv-7425 |
| CAVALRY PORTFOLIO SERVICES, LLC and CAVALRY INVESTMENTS, LLC, | ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Jonathan Simkus ("Simkus") filed a three-count class action complaint against Defendants Cavalry Portfolio Services, LLC and Cavalry Investments, LLC (collectively, "CPS"), seeking monetary damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and the Illinois Collection Agency Act, 225 ILCS 425/9 ("ICAA"), as well as declaratory and injunctive relief. Presently before us is CPS's motion to dismiss all counts for failure to state a claim. For the reasons set forth below, we deny CPS's motion.

### BACKGROUND

Under the federal regulation entitled "Uniform Retail Credit Classification and Account Management Policy," a bank is required to charge-off a credit card receivable after it has been delinquent 180 days, thereby removing it from the bank's books as an asset. Notices Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account

1

Management Policy, 65 Fed. Reg. 36903-01 (June 12, 2000). (Compl. ¶ 44.) In early 2009, Bank of America charged-off a debt incurred by Simkus for personal, family, or household purposes. (*Id.* ¶¶ 18–19.) Under applicable regulations, Bank of America was required to send periodic statements to Simkus until it deemed that the account was "uncollectible, or if delinquency collection proceedings [had] been instituted." 12 C.F.R. § 226.5(b)(2)(I) (effective until Feb. 21, 2010).[1] (Compl. ¶ 47.) The term "uncollectible" was not defined in the regulations; however, after charging-off Simkus's debt, Bank of America did not send any billing statements regarding the account. (*Id.* ¶ 31.)

On or about December 9, 2010, Capital Management Services, L.P., on behalf of Bank of America, sent Simkus a request for debt in the amount of $7,077.66. (*Id.* ¶ 17 & Ex. A.) In May of 2011, Bank of America reported to Trans Union that the high balance of the debt was $7,077. (Compl. ¶ 25 & Ex. C.) Shortly after, Bank of America sold the debt, in the amount of $7,078, to CPS. (Compl. ¶ 33 & Ex. C.) On June 13, 2011, CPS sent a letter to Simkus, informing him that CPS had purchased the debt and requesting repayment in the amount of $10,828.28. (Compl. ¶ 25 & Ex. B.) After receiving this notice, in a letter dated June 29, 2011, Simkus informed CPS that he was not aware of the account number on record and requested that CPS send him any and all information related to the alleged debt. (Compl. ¶¶ 36–37 & Ex. D.) Prior to issuing a response, CPS reported to Trans Union, in August of 2011, that the amount of Simkus's debt was $11,192. (Compl. ¶ 26 & Ex. C.) Finally, on September 2, 2011, CPS responded to Simkus's request and reported the debt as $11,220.79 but did not provide the

---

[1] Effective October 1, 2011, 12 C.F.R. § 226.5(b)(2)(I), as amended, requires banks to send periodic statements unless the bank deems the account uncollectible, delinquency proceedings have been instituted, or the account has been charged-off and the bank will no longer charge any additional fees or interest.

original Bank of America account number. (Compl. ¶ 38–39 & Ex. E.) Simkus consulted counsel and obtained his credit report to verify that the debt reported by CPS was the same debt originally owned by Bank of America. (Compl. ¶ 40 & Exs. A, B.)

Simkus alleges that Bank of America did not charge interest after charging-off the debt (Compl. ¶ 30); however, CPS retroactively added interest for the period of time between the charge-off by Bank of America and CPS's purchase of the account. (*Id.* ¶¶ 29, 50.) Simkus claims that this addition of interest is prohibited under FDCPA and ICAA because Bank of America waived all further interest charges on the account after its charge-off, and CPS does not have the right to retroactively reverse the decision of Bank of America. (*Id.* ¶ 34, 51.) Simkus filed his putative class action complaint ("Complaint") in the Northern District of Illinois, seeking redress from unlawful credit and collection practices engaged in by CPS, namely that CPS added unauthorized interest to debts they purchased. (Compl. ¶ 1.) CPS in turn filed the pending motion to dismiss all claims in the Complaint. (Mot. at 1.)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Pursuant to Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a court may

grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, --, 129 S. Ct. 1937, 1949–50 (2009) (extending *Twombly* from anti-trust to litigation generally and stating that a court's determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65 (holding that a sufficient complaint must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action"); *Killingsworth*, 507 F.3d at 618–19. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a).

## ANALYSIS

### A.  FDCPA and ICAA Claims

In his first two claims for relief, Simkus alleges violations of both FDCPA and ICAA for CPS's addition of unauthorized interest to his debt.[2]

Under FDCPA, Simkus claims that this practice is both a deceptive collection practice and an unfair collection practice under 15 U.S.C. § 1692e and §1692f.  Section 1692e regarding deceptive collection practices provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2)  The false representation of –
>
>   (A)  the character, amount, or legal status of any debt; . . .
>
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
>
> (10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

Section 1692f  of FDCPA regarding unfair practices provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is in violation of this section:
>
> (1)  The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

---

[2] We address the federal and state claims together because the same issue controls both.

In addition to federal claims under FDCPA, Simkus also alleges violations of Illinois law, specifically ICAA, 225 ILCS 425/9.[3] Simkus claims that CPS violated the following provisions of ICAA:

>   (20)   Attempting or threatening to enforce a right or remedy with knowledge or reasons to know that the right or remedy does not exist. . . .
>
>   (26)   Misrepresenting the amount of the claim or debt alleged to be owed.
>
>   (27)   Representing that an existing debt may be increased by the addition of attorney's fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt. . . .
>
>   (29)   Collecting or attempting to collect any interest or other change or fee in excess of the actual debt or claim unless such interest or other charge or fee is expressly authorized by the agreement creating the debt or claim unless expressly authorized by law. . . .

### I. *CPS's Rights at the Time of Assignment*

Both Simkus and CPS agree that when CPS purchased the debt from Bank of America, CPS, as the assignee, took "'the assignor's [Bank of America's] interest subject to all legal and equitable defenses existing at the time of assignment.'" *John O. Schofield, Inc. v. Nikkel*, 314 Ill. App. 3d 771, 783, 731 N.E.2d 915, 925 (5th Dist. 2000) (quoting *Stavros v. Karkomi*, 39 Ill. App. 3d 113, 123, 349 N.E.2d 599, 607 (1st Dist. 1976)); *accord Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005) (finding that "once assignors were authorized to charge interest, the common law kicked in and gave the assignees the same right, because the common

---

[3] CPS argues that there is no private cause of action under ICAA, because Simkus has not alleged actionable damages. (Mot. at 11 n.3.) "Reviewing courts in Illinois appear not to have addressed whether actual damages are required under the ICAA; however, several district courts have found that they are." *Terech v. First Resolution Mgmt. Corp.*, No. 11 C 4076, 2012 WL 1230732, at *14 (N.D. Ill. Apr. 12, 2012). Here, Simkus has, at least cursorily, alleged actual damages and CPS raised the issue only in a footnote on the final page of their motion and briefly in their response to additional authority. Therefore, at this time, we will not dismiss the case on this ground.

law puts the assignee in the assignor's shoes, whatever the shoe size"). Therefore, CPS possesses only the rights held by Bank of America at the time of assignment.

### ii. Bank of America's Alleged Waiver of Right to Charge Interest

In determining what rights CPS inherited at the time of assignment, the primary issue is whether Bank of America waived its right to charge interest and other fees after charging-off Simkus's debt. (Compl. ¶¶ 34, 49, 51; Mot. at 6–7; Resp. at 4–6.) If Bank of America waived its right to charge interest, then CPS would not inherit the right to do so. Therefore, if CPS retroactively charged interest, it may have violated the aforementioned provisions of FDCPA and ICAA.

Generally, waiver is "the intentional relinquishment of a known right." *Sethness-Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64, 67 (7th Cir. 1995); *see also Bank v. Truck Ins. Exch.*, 51 F.3d 736, 739 (7th Cir. 1995). Waiver of contractual rights can be express or implied from "'actions inconsistent with the assertion of those rights.'" *Cent. States, Se. and Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 672 (7th Cir. 2005) (quoting *Bank*, 51 F.3d at 739); *see Havoco of Am., Ltd. v. Sumitomo Corp.*, 971 F.2d 1332, 1337 (7th Cir. 1992); *Lavelle v. Dominick's Finer Foods, Inc.*, 227 Ill. App. 3d 764, 592 N.E.2d 287, 291 (1st. Dist. 1992). However, an implied waiver must be proved by a "clear, unequivocal, and decisive act," *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 104, 585 N.E.2d 46, 49 (Ill. 1991), "'inconsistent with any other intention than to waive it,'" *Costello v. Grundon*, 651 F.3d 614, 641 (7th Cir. 2011) (quoting *Wolfram P'ship, Ltd. v. LaSalle Nat'l Bank*, 328 Ill. App. 3d 207, 765 N.E.2d 1012, 1026 (1st Dist. 2001)). Therefore, implied waiver only arises "'where (1) an unexpressed intention to waive can be clearly inferred from the circumstances or (2) the conduct of the

waiving party has misled the other party into a reasonable belief that a waiver has occurred.'" *Costello*, 651 F.3d at 641; *see also McElroy v. B.F. Goodrich Co.*, 73 F.3d 722, 724 (7th Cir. 1996) (holding that "Illinois courts require that for a contractual waiver to be effective it must 'either have induced reliance . . . or be clearly inferable from the circumstances'").

Since neither Simkus, nor CPS, allege that Bank of America expressly waived its right to charge interest after charging off Simkus's debt, the issue is whether Bank of America impliedly waived its rights. Implied waiver is factually specific and dependent upon the "conduct, acts or words of the party who is alleged to have waived a right." *Delta Consulting Group Inc. v. R. Randle Constr. Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009); *see Ryder*, 146 Ill.2d at 104, 585 N.E.2d at 49 (finding that whether a bank had waived its acceleration rights is a "question of fact"). At this stage, we find that Simkus's factual allegations are sufficient to support a claim that Bank of America waived its right to charge interest after the charge-off of Simkus's debt, which therefore prevents CPS from retroactively charging this interest upon assignment. First, Bank of America charged-off Simkus's debt in the amount of $7,077.76 in early 2009. (Compl. ¶ 19.) Almost two years later, in December of 2010, Capital Management Services, on behalf of Bank of America, still sought to collect only $7,077.66. (*Id.* ¶ 17 & Ex. A.) Subsequently, in May of 2011, Bank of America reported to Trans Union that the amount of the debt was $7,077. (Compl. ¶ 25 & Ex. C.). Shortly after, when Bank of America sold the debt to CPS, the amount reported to Trans Union was $7,078. (Compl. ¶ 33 & Ex. C.) In addition, after charging off the debt, Bank of America never sent any further billing statements to Simkus indicating that it was continuing to charge interest on the charged-off amount. (Compl. ¶ 31.) *But see Terech v. First Resolution Mgmt. Corp.*, No. 11 C 4076, 2012 WL 1230732, at *10 (N.D. Ill. Apr. 12, 2012).

8

These factual allegations support the claim that Bank of America evinced its intention to waive the right to charge interest post charge-off. *See Costello*, 651 F.3d at 641; *see also McElroy*, 73 F.3d at 724; *Terech*, 2012 WL 1230732, at *3. Therefore, it is reasonable to infer that CPS, the assignee, violated FDCPA and ICAA by charging unauthorized interest after Bank of America, the assignor, had already waived its right to do so.[4]

CPS attempt to distinguish the current case from *Terech*, a similar case in which a motion to dismiss was denied, by arguing that Simkus's alleged facts would be sufficient if the above cited amounts described the "face value" of the debt; however, as they describe the "original balance" and "high balance" of the debt, they are insufficient. *See Terech*, 2012 WL 1230732, at *3. We are unpersuaded by this distinction. CPS fails to provide any definition used by Bank of America for "original balance" or "high balance." Instead, CPS explains that the relevant document "does not state what comprises this 'balance' nor does it contain any statement at all concerning the treatment of interest." (Reply at 7.) Thus, it remains plausible that the amount indicated on Simkus's statements would have included accrued interest, if interest were in fact accruing, and we will not distinguish *Terech* on this ground. Accordingly, we deny CPS's motion to dismiss the FDCPA and ICAA claims.

**B. Claim for Declaratory and Injunctive Relief**

Simkus is also seeking a declaration that CPS may not retroactively add interest for the period prior to its ownership of the debt and an injunction prohibiting CPS from demanding such interest or reporting it to credit bureaus. (Compl. ¶ 86.) Based on the foregoing analysis of the

---

[4] CPS argues in its reply that Simkus's credit card agreement states that Bank of America's failure to exercise its rights will not waive any of its rights in the future. While this may be relevant, the credit card agreement was not included in the complaint, nor has CPS offered to provide it. Therefore, we will not rely on it at the motion to dismiss stage.

FDCPA and ICAA claims, Simkus has sufficiently alleged facts that support a claim that Bank of America waived its right to charge interest, and therefore, CPS, as the assignee, does not have the right to retroactively charge this interest. Consequently, we deny CPS's motion to dismiss the claims for declaratory and injunctive relief.[5]

## CONCLUSION

For the foregoing reasons, Defendant CPS's motion to dismiss is denied. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
         May 22, 2012

---

[5] Again relying on *Terech,* 2012 WL 1230732, CPS argues that injunctive and declaratory relief are not available under the FDCPA. However, CPS raises this argument only in the final paragraph of its response to the additional authority. Ordinarily we will not consider an argument if the nonmoving party has not had an opportunity to respond. *See United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Simkus did not have an opportunity to respond. Therefore, we will not address the argument at this time.