**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN SIMKUS, | ) | |
| on behalf of himself and the classes | ) | |
| described herein, | ) | |
| | ) | 11-cv-7425 |
| Plaintiff, | ) | |
| | ) | Judge Marvin E. Aspen |
| vs. | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, | ) | |
| LLC and CAVALRY SPV I, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

After plaintiff Jonathan Simkus lost his job and was unable to keep up with the payments on his Bank of America ("BOA") credit card account, BOA charged it off in April 2009. In the two years after charge-off, BOA could have, but chose not to, assess interest on plaintiff's account. After charge-off, BOA never (1) reported any amount to the credit bureaus other than the charge-off amount, (2) never attempted to collect any amount other than the charge-off amount, and (3) never sent an account statement to plaintiff. In short, BOA engaged in a course of conduct which evidenced its intent to waive its right to assess post-charge-off interest.

In May 2011, two years after charge-off, defendant Cavalry SPV I, LLC ("SPV I, LLC) bought plaintiff's BOA account. Both SPV I, LLC and Defendant Cavalry Portfolio Services, LLC ("CPS") retroactively imposed, and tried to collect, the interest on plaintiff's account that BOA, as a matter of law, had waived. Defendants added, and attempted to collect, the interest that BOA had declined to assess between the date of charge-off and the date BOA sold the

1

account to SPV I, LLC. In doing so, defendants violated §§ 1692e and f of the Fair Debt

Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA").

## I.     SUMMARY OF UNDISPUTED FACTS

Plaintiff Jonathan Simkus had a BOA credit card account ("the Account") which he used

for personal, family, or household purposes and not commercial purposes. (Plaintiff's Local Rule

56.1 Statement Of Material Fact In Support of Motion for Summary Judgment on Liability

("Plaintiff's Facts") ¶ 11.) BOA charged-off the Account on or about April 30, 2009 after

plaintiff lost his job and tried unsuccessfully to keep up with the payments. (Plaintiff's Facts

¶12.) The balance on the Account on the date of charge-off was $7,077.66. (Plaintiff's Facts

¶13.)

By its own admission, BOA did not assess interest on plaintiff's account after charge-off.

(Plaintiff's Facts ¶ 14.) After charge-off, BOA did not send any account statements to plaintiff.

(Plaintiff's Facts ¶ 15.) After charge off, BOA retained a debt collector, Capital Management

Services, L.P. ("Capital Management"),  to collect on the Account. (Plaintiff's Facts ¶ 16.) The

amount Capital Management Services, L.P. sought to collect in December 2010 was the charge-

off amount of $7,077.66. (Plaintiff's Facts ¶ 17.)

BOA, through its subsidiary FIA Card Services, sold the Account to SPV I, LLC on May

11, 2011. (Plaintiff's Facts ¶ 18.) The sale of plaintiff's Account was governed by a Loan Sale

Agreement which provided that the "unpaid balance" on each account consisted of "interest

(accrued or unaccrued), costs, fees and expenses." (Plaintiff's Facts ¶ 20.)

SPV I, LLC, a debt collector as defined in § 1692a(6) of the FDCPA, is engaged in the

business of purchasing or acquiring charged-off consumer debts originally owed to others.

(Plaintiff's Facts ¶¶ 3-4.) The "unpaid balance" on the Account when it was sold to SPV I, LLC was $7,077.66, and BOA reported it as such to Trans Union. (Plaintiff's Facts ¶¶ 19, 21.) After purchase, defendants added interest to the Account for the period between the charge-off date and the purchase date. (Plaintiffs' Facts ¶ 22.)

One month after purchase, on or about June 13, 2011, CPS, an affiliate of SPV I, LLC and a debt collector as defined in § 1692a(6), sent plaintiff a collection letter which sought to collect $10,828.28 on the Account (Plaintiff's Facts ¶¶ 7-8, 23.) Plaintiff was confused by the June 13, 2011 letter and how the Account balance could increase approximately 50% between December 9, 2010, the date of the Capital Management letter, and CPS's June 13, 2011 letter. (Plaintiff's Facts ¶ 24.) Plaintiff was also confused by the account number in CPS's letter and sent a letter to CPS requesting verification of the debt. (Plaintiff's Facts ¶ 25.) In August 2011, CPS reported a balance of $11,192 on the Account to Trans Union. (Plaintiff's Facts ¶ 26.) On or about September 2, 2011, CPS sent a letter to plaintiff that stated the balance on the Account had increased to $11,220.79. (Plaintiff's Facts ¶ 27.)

## II.    THE FAIR DEBT COLLECTION PRACTICES ACT

In enacting the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), Congress recognized the  --

> universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697, *reprinted in* Hobbes, *Fair Debt Collection* (7th ed) Vol. 2, pp. 724-728. The FDCPA states that

its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors."15 U.S.C. §1692(e). The Act is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt. The Act also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2nd Cir. 1973). Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001); *Whatley v. Universal Collection Bureau*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . ." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to

excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2nd Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir.2000). The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); *accord*, *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); *Gearing*, 233 F.3d at 472.

The Seventh Circuit evaluates a letter's compliance with the FDCPA by the "unsophisticated consumer" standard. *Avila v. Rubin*, 84 F.3d 222, 226-27 (7th Cir. 1996). The letter must be clear and comprehensible to an individual who is "uninformed, naïve, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), but not without a rudimentary knowledge about the financial world or incapable of making basic deductions and inferences, *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). The unsophisticated consumer test is an objective test, meaning that it is unimportant whether the individual that actually received a violative letter was misled or deceived. *Lox v. CDA, Ltd.*, 2012 U.S. App. LEXIS 15961, *19 (7th Cir. Aug. 2, 2012).

## III.   DEFENDANTS VIOLATED THE FDCPA BY IMPOSING RETROACTIVE ON PLAINTIFF'S ACCOUNT

### A.   BOA Waived Post-Charge-Off Interest On Plaintiff's Account

BOA waived all post-charge-off interest on plaintiff's Account. Waiver can be shown or inferred "from the conduct of the party who is alleged to have waived a right." *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991.) Implied waiver of a legal right

must be provided by a clear, unequivocal, and decisive act of the party who is alleged to

> have committed waiver. "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right of where his conduct is inconsistent with any other intention than to waive it."

*Id*. (citations omitted) (quoting *Kane v. Amer. Nat'l Bank & Trust, Co.*, 316 N.E.2d 177, 182 (Ill. App. Ct. 1974)). *Accord*, *Delta Consulting Group Inc. v. R. Randle Constr. Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). In North Carolina, where BOA is headquartered, waiver is similarly demonstrated by showing (1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit. *Demeritt v. Springsteed*, 693 S.E.2d 719, 721 (2010). *Accord  Aeroglobal Capital Management LLC v. Cirrus Industries Inc*., 871 A.2d 428, 444-445 (Del. 2005).

Waiver is shown here by BOA's conduct after charging-off plaintiff's Account. BOA charged off the Account on April 30, 2009 after plaintiff lost his job and tried unsuccessfully to keep up with the payments. (Plaintiff's Facts ¶ 12.) In the two years between charge-off and when the Account was sold to SPV I, LLC, BOA, by its own admission, could have, but chose not to, assess interest on plaintiff's account. (Plaintiff's Facts ¶ 14.) After charge-off, BOA never reported any amount to the credit bureaus other than the charge-off amount;  BOA never attempted to collect any amount other than the charge-off amount; and BOA never sent an account statement to plaintiff. In short, BOA engaged in a course of conduct which evidenced its intent to waive its right to assess post-charge-off interest.

The balance on the Account on the date of charge-off, April 30, 2009, was $7,077.66. (Plaintiff's Facts ¶13.) In December 2010, nineteen months after charge-off, BOA retained a debt collector, Capital Management, to collect that sum from plaintiff. (Plaintiff's Facts ¶¶ 16-

17.) In May 2011, twenty-five months after charge-off, BOA reported the balance on the Account to Trans Union as $7,077. (Plaintiff's Facts ¶20.) That same month, when SPV I, LLC purchased the Account, the balance remained $7,077.66. (Plaintiff's Facts ¶ 21.) During the period between charge-off and sale to SPV I, LLC, BOA did not send any account statements to plaintiff. (Plaintiff's Facts ¶ 15.)

BOA had good reasons to waive post-charge interest. BOA, like most banks, want, for regulatory reasons, to minimize the number and amount of bad debts on their books. Prior to February 22, 2010 (when the regulation was amended), banks were required to issue periodic statements on an account until the bank "[deemed] it uncollectible," or instituted legal proceedings. 12 C.F.R. §1026.5(b)(2). The addition of interest could be construed as meaning that the debt was *not* deemed uncollectible. See 26 C.F.R. §1.6050P-1. Most banks prudentially did not add interest to charged off debts.

As amended, 12 C.F.R. § 1026.5(b)(2) now requires banks to send periodic statements on all accounts, including defaulted accounts, for any period during which interest or fees are added to the account. 12 C.F.R.§ 1026.5(b)(2)(i) ("A periodic statement need not be sent for an account if the creditor deems it uncollectible, if delinquency collection proceedings have been instituted, if the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account. . . ."). Banks generally prefer to waive the interest and save the expense of preparing and sending statements.

In *In re 400 Walnut Assocs. LP*, No. 10-16094 SR, Adv. No. 10-0456 461 B.R. 308, 313 (Bankr. E.D. Pa. 2011) *rev'd on other grounds and remanded*, 473 B.R. 603 (E.D. Pa. 2012), the assignor bank did not assess compound interest prior to assignment of a note. *400 Walnut,* 461

B.R. at 313. The court held that the assignor bank's failure to assess compound interest constituted a waiver of that interest for the period of time that the assignor bank held the note. In so holding, the court noted that "A commercial lender such as Sovereign certainly is presumed to be aware of its rights with regard to the accrual of interest. Yet it did not compound interest while it held the note." *Id* at 314.

In *In re Sweet*, 369 B.R. 644, 651-652 (Bankr. D. Colo. 2007), the court held that the assignor of a defaulted note had waived the right to assess interest at the default rate because it had never manifested any intention to assess interest at the default rate. Similarly, in *Padilla v. Ghuman*, 183 P. 3d 653 (Colo. Ct. App. 2007), after the borrower went into default, the lender did not take any action showing an intent to assess the default rate. Consequently, the court held that the lender had waived its right to assess the default rate. *Padilla*, 183 P.3d at 659. *See also In re Crystal Properties, Ltd.*, 268 F.3d 743 (9th Cir. 2001).

Like the lender in *400 Walnut*, BOA, a sophisticated lender and one of the largest banks in the world, "is presumed to be aware of its rights with regard to the accrual of interest." *400 Walnut*, 461 B.R. at 314. BOA's failure to assess interest on plaintiff's Account during the 24 months between charge-off and sale to SPV I, LLC "sufficiently evidence(s) an intention to waive" a right to impose interest on plaintiff's Account and "is inconsistent with any other intention than to waive it." *Kane v. Amer. Nat'l Bank & Trust, Co.*, 316 N.E.2d 177, 182 (Ill. Appl. Ct. 1974).

Defendants may argue that BOA did not waive its rights because the "Enforceability" clause in the CardMember Agreement states: "Our failure to exercise any of our rights under this Agreement will not waive any of those rights in the future." (Plaintiff's Facts ¶ 28.) In *400*

8

*Walnut*, there was a similar provision: "[T]he note provides that any forbearance by the lender in exercising any right or remedy under the loan documents shall not waive or preclude the exercise of such right." *In re 400 Walnut Associates, L.P.*, 461 B.R. at 314. The *400 Walnut* court held that the assignor bank had waived the assessment of compound interest and the assignee could not impose that interest retroactively. *Id*. But the court also held that that waiver did not constitute a permanent waiver; the assignee could impose for the period after the assignee acquired the note upon proper notice. *Id*. at 315. As in *400 Walnut*, defendants are precluded from charging the interest BOA chose not to charge; however, they can charge interest after they purchased the account after giving appropriate notice.

## B. BOA's Waiver of Post-Charge Interest Barred Defendants From Imposing Interest From The Date of Charge-Off To The Date Of Sale

Defendants had no right to impose interest on plaintiff's Account for the period between charge-off and sale. It is axiomatic that an assignee only acquires those rights that the assignor had – and had not waived – as of the date of the assignment. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 570, 762-763 (7th Cir. 2007). The "assignee can obtain no greater right or interest than that possessed by the assignor, inasmuch as one cannot convey that which he does not have." *Litwin v. Timbercrest Estates, Inc.*, 347 N.E.2d 378, 379-80 (Ill. App. Ct. 1976). Here, because BOA had waived the right to charge interest on plaintiff's Account between the date of charge-off and the date of sale to SPV I, LLC, defendants were barred from doing so.

In *400 Walnut, supra*, after the court determined that the assignor bank had waived the right to assess compound interest, the court determined that the assignees were barred from assessing compound interest.

A commercial lender such as Sovereign certainly is presumed to be aware of its rights

9

with regard to the accrual of interest. Yet it did not compound interest while it held the note. As assignee, 4th Walnut stands in the shoes of the assignor (Sovereign) and so its rights rise no higher than Sovereign's. *Because Sovereign waived its right to compound unpaid interest for the time it held the loan, 4th Walnut has no right to reverse that decision.* . . . 4th Walnut can point to no decision which expressly upholds this practice, which practice the Court finds to be *avaricious and highly improper.*

*In re 400 Walnut*, 461 B.R. at 314 (emphasis added).

Similarly, in *In re Nixon*, 400 B.R. 27 (Bankr. E.D. Pa. 2008),  a provision in the

agreement between the assignor bank and the debtor provided that "Lender may delay or forgo

enforcing any of its rights or remedies under this Note without losing them." *In re Nixon*, 400

B.R. at 35. After default, the  assignor bank did not assess interest at the default rate. The *Nixon*

court held that the assignee could not retroactively assess interest at the default rate for the

period of time in which the bank held the note and chose not to assess the default rate:

> I reject [the assignee] Foster's contention that he may charge the Default Rate retroactively to the date of Judgment when he had no rights under the Note at that time and there is no evidence that the Bank had ever imposed the higher charge. The rights of Foster, as assignee, rise no higher than those of the Bank. He had the right as of the date he acquired his interest in the loan documents to impose the higher rate, and Foster's letter to Nixon written shortly after the undated assignment provides evidence in the record that he did so.

*In re Nixon*, 400 B.R. 27, 35 (Bankr. E.D. Pa. 2008).  *See also In re Sweet*, 369 B.R. at 651-652

(assignee could not recover default interest retroactively when assignor had waived the right

collect that interest);  *Padilla v. Ghuman*, 183 P. 3d 653 (Colo. Ct. App. 2007) (assignee could

not recover interest at the default rate for the period in which the assignor had waived its right to

collect default-rate interest); *In re Crystal Properties, Ltd.*, 268 F.3d 743 (9th Cir. 2001) (same).

By their own admission, defendants added interest for the period between charge-off and sale.

("Plaintiff's Facts ¶ 14.) Defendants had *no* right to reverse BOA's decision to waive interest on

plaintiff's Account. Defendants' attempts to collect interest that BOA had waived were

"avaricious and highly improper." Defendants' conduct also violated the FDCPA.

If in April 2011, approximately two years after BOA had charged-off the Account, BOA had attempted add two years of interest to the Account, BOA would have been precluded from doing so by its prior waiver of interest. Defendants' purchase of the Account one month later did not give them rights that BOA did not have to tack on two years worth of interest onto the account. But that is precisely what they did, and that conduct violated the FDCPA.

**C.      Defendants Violated the FDCPA By Adding
          Retrospective Interest That BOA Had Waived
          and Misrepresenting the Amount Plaintiff Owed**

Defendants violated both §§ 1692e and f of the FDCPA when they added interest to Plaintiff's account that BOA had waived.

### 1.      Defendants Violated § 1692f Of The FDCPA

Section 1692f of the FDCPA provides that a debt collection may not use "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. More specifically, § 1692f prohibits:

> (1)      The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

15 U.S.C. § 1692f (1).

Courts have held that attempts to collect, or actual collection, of money that is not authorized by law or contract violates § 1692f(1). *Seeger v. AFNI Inc.*, 548 F.3d 1107, 1111-1113 (7th Cir. 2008) (unauthorized collection fee); *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004), (debt collector's attempt to collect court costs when no such costs had been allowed by a court violated § 1692f(1); *McCollough v. Johnson, Rodenburg & Lauinger, L.L.C.*, 637 F.3d 939, 949-

950 (9th Cir. 2011) (unauthorized attorney's fees); *Johnson v. Riddle*, 305 F.3d 1107, 1118-1120

(10th Cir. 2002) (unauthorized shoplifting fee); *Pollice v. National Tax Funding LP*, 225 F.3d

379, 407-408 (3rd Cir. 2000) (unauthorized interest and late charges).

As in the above cited cases, defendants violated § 1692f(1) by attempting to collect from

plaintiff interest it was not authorized to collect.

### 2.     Defendants Violated § 1692e Of The FDCPA

Section 1692e of the FDCPA prohibits "false, deceptive, or misleading representation(s)

or means in connection with the collection of any debt." 15 U.S.C. § 1692e. More specifically, §

1692e prohibits:

(2)     The false representation of --
(A)      the character, amount, or legal status of any debt; . . .
(5)     The threat to take any action that cannot legally be taken or that is not intended to
be taken. . . .
(10)     The use of any false representation or deceptive means to collect or attempt to
collect any debt . . . .

15 U.S.C. §§ 1692e, e(2)(A), e(5), e(10).

Numerous courts have held that misstating the amount owed, including attempts to assess

unlawful interest, violate § 1692e of the FDCPA. *Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir.

2003) (defendant overstated amount of the debt); *Ross v. RJM Acquisitions Funding LLC*, 480

F.3d 493, 495 (7th Cir. 2007) (attempting to collect debts discharged in bankruptcy);

*Acik v. IC Systems Inc.*, 640 F. Supp. 2d 1019, 1024-27 (N.D. Ill. 2009) (unlawful interest and

fees added to medical debt); *Nance v. Ulferts*, 282 F. Supp. 2d 912, 916-918 (N.D. Ind. 2003)

(defendants' violations of state usury laws violated FDCPA); *Sunga v. Rees Broome PC*, 2010

U.S. Dist. LEXIS 81970, *10-23 (E.D. Va. Aug. 12, 2010) (unlawful condominium

assessments); *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 269 (D. Conn. 2005) (debt

collector who sought to collect more than $10,000 on a $400 debt violated §§ 1692e(2)(A) and

f(1)); *Crippen v. Stites*, 346 B.R. 115, 120-121 (Bankr. E.D. Pa. July 25, 2006) (allegations that

debt collector sought to collect amounts in excess of that allowed by law and the mortgage

instrument stated a claim under §§ 1692e(2)(A) and f(1)); *Maxwell v. Fairbanks Capital Corp.*,

281 B.R. 101, 119 (Bankr. D. Mass. July 16, 2002) (accord).

In May 2011, BOA reported the balance on the Account to Trans Union as $7,066. One

month later, after SPV I, LLC had purchased the Account, defendants sent plaintiff a letter

representing the amount owed as $10,828.28. The Account balance did not increase by

$3,750.62 in 1 month or 6 months; such an increase would require an interest rate in excess of

100%. No interest rate in excess of 100% is authorized on any credit card by BOA and its

affiliates. Instead, the $3,750.62 increase in the amount owed was due to defendants' adding

interest to the account which BOA had waived. For the reasons discussed in the last section,

defendants had no right to retroactively add the interest that BOA had waived. Defendants'

attempt to collect amounts not owed by Plaintiff violated §§1692e(2)(A) and e(10). *Veach*, *Ross*,

*Acik,  Nance, Sunga, Goins Crippen*, *Maxwell, supra*.

In *Fields v. Wilbur Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), the Seventh Circuit held

that an attorney debt collector who sent a dunning letter to a consumer which, without

explanation, increased the amount owed by the amount of the attorney's legal fees violated

§1692e(2)(A). *Fields*, 383 F.3d at 565-566. *Fields* held that, even if the legal fees were permitted

by law or contract, and even if otherwise reasonable, a fact finder could conclude that, without

explanation, lumping  the fees together with the amount of the original debt was misleading and

unfair. Here, defendants did not explain in their collection letters that they were lumping retroactively-applied interest with the original amount of the debt.

Even if, *arguendo*, defendants properly added retroactive interest, under *Fields*, Defendants still violated §1692e(2)(A) and § 1692f by failing to explain in their dunning letters (Plaintiff's Facts ¶¶ 23, 27) how in the space of a month or a few months, the balance on plaintiff's Account increased by $3,750.62 and more. As *Fields* noted, "One simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt." *Fields*, 383 F.3d at 566. Defendants made no effort to itemize the amount they were seeking to collect from Plaintiff. On two separate occasions (Plaintiff's Facts ¶¶ 23, 27), defendants simply listed an amount owed as a lump sum, an amount that made no sense to plaintiff in light of his prior understanding of the amount BOA was claiming he owed. (Plaintiff's Facts ¶ 24.)

## IV. CONCLUSION

For the foregoing reasons, plaintiff respectfully urges the Court to grant plaintiff's motion for summary judgment on liability.

Respectfully submitted,

s/ Francis R. Greene
Francis R. Greene

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

       I, Francis R. Greene, hereby certify that on June 19, 2013, I caused to be filed the foregoing document via the CM/ECF System, which caused to be sent notification of such filing to the following parties via electronic mail:

Anna-Katrina S. Christakis
kchristakis@gradypilgrim.com

Raechelle Delarmente Norman
rnorman@gradypilgrim.com


                              s/Francis R. Greene
                              Francis R. Greene