**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JONATHAN SIMKUS, ) | |
| ) | |
| Plaintiff, ) | Case No.  11-cv-7425 |
|         v. ) | |
| ) | Judge Marvin E. Aspen |
| CAVALRY PORTFOLIO SERVICES, LLC and ) | |
| CAVALRY SPV I, LLC; ) | Magistrate Judge Sheila M. Finnegan |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Cavalry Portfolio Services, LLC ("CPS") and Cavalry SPV I, LLC ("SPV"), by their attorneys, Anna-Katrina S. Christakis and Raechelle Delarmente Norman (Pilgrim Christakis LLP, *of counsel*), move for summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**INTRODUCTION**

Each of Plaintiff's three causes of action—claims under the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Collection Agency Act ("ICAA"), and request for Declaratory Judgment and Equitable Relief[1]—are premised on the unproven allegations that his original creditor, Bank of America ("BOA"), waived interest on his credit card account after charge-off, but that Defendants "retroactively reversed" that decision when they acquired and sought to collect the debt.  (Am. Compl. ¶¶ 49, 51.)  In other words, Plaintiff contends that he should be relieved of his contractual obligations under his credit card agreement simply because BOA wrote off the debt and removed it from its balance sheet.

---

[1] Plaintiff has indicated that he intends to withdraw Counts II (ICAA) and III (Declaratory Judgment).  In reliance on those representations, this Motion is directed only at Count I (FDCPA).

Plaintiff takes the unsupportable position that BOA's failure to *charge* interest post charge-off necessarily means interest on the account ceased *accruing*—until such time as his account was sold to a third party, at which point interest could once again begin to accrue. "I don't believe it's fair with Bank of America not choosing to add interest until they sell the debt for it to be just picked up from the beginning and not from - just start from when the collection agency acquires the account." (SUMF ¶ 30.) However, "charge off" does not mean that a consumer no longer owes the money (plus interest and penalties, depending on the terms and conditions of the credit agreement). Indeed no regulation provides and no court has held that interest is waived when a creditor charges a debt off its book, and there is no evidence that BOA did so here.

And yet Plaintiff is asking this Court to find that he is excused from his contractual obligation to pay interest simply because he defaulted in the first instance (causing BOA to write-off the asset to reduce its profits and taxes, and eventually sell it to a third party). As one court put it: "Plaintiff's argument amounts to the absurd proposition that credit card holders who are unable to pay their debt need merely stop payment for 180 days, at which point—through the inexorable interplay of accounting and tax reporting requirements—such debts will automatically become taxable income and be extinguished." *Kelly v. Wolpoff & Abramson*, 634 F. Supp. 2d 1202, 1211 (D. Colo. 2008); *see also* Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 20, 2000) (mandating that banks charge-off credit card receivables after they have been delinquent 180 days). Plaintiff's argument here is all the more absurd in the face of the non-waiver provision in his cardholder agreement,

expressly stating that BOA's "failure to exercise any rights ... will not waive any of [its] rights in the future." (SUMF ¶ 38.)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff's Account History with Bank of America

Plaintiff opened a credit card account with BOA on July 18, 2003 ("Account"). (SUMF ¶ 6.) He understood that his Account was subject to a written cardholder agreement. (SUMF ¶¶ 7, 9.) He also understood that, in exchange for advancing him the funds to make purchases on credit, BOA would charge interest on any unpaid balances. (SUMF ¶ 10.) At some point, Plaintiff ceased making payments on the Account, and the Account went into default. (SUMF ¶ 11.) The Account was charged-off by BOA on April 30, 2009. (SUMF ¶ 12.) On December 9, 2010, through its agent Capital Management Services, LP ("Capital Management"), BOA sent a collection letter to Plaintiff, reflecting a balance due of $7,077.66. (SUMF ¶ 15.) The letter does not contain any statements pertaining to the waiver of interest, retroactively or prospectively. (SUMF ¶ 16.) Plaintiff did not immediately respond to this letter. (SUMF ¶ 17.)

In May 2011, BOA reported to TransUnion that the Account had been "charged off as bad debt," and had a "High Balance" of $7,077.66, a "Balance" of $0, and a "Past Due" amount of $0. (SUMF ¶ 18.) Plaintiff testified that he understood "high balance" to mean "the highest unpaid balance on that card," but did not know what the "Balance" and "Past Due" notations meant. (SUMF ¶¶ 19-20.) It is undisputed that BOA did not seek to collect interest on the Account after it was charged-off. (SUMF ¶ 14.)

3

### B. Bank of America Sells Plaintiff's Account

Subsequently, SPV acquired the Account from BOA. (SUMF ¶ 21.) Pursuant to this transaction, SPV had complete authority to settle, adjust, compromise and satisfy the Account. (SUMF ¶ 22.) SPV added interest to the Account that had accrued during the period prior to its acquisition, while the debt was owned by BOA. (SUMF ¶ 23.) Thus, on June 13, 2011, CPS (as SPV's assignee) sent Plaintiff a letter reflecting an outstanding balance of $10,828.28. (SUMF ¶ 24.)[2] When he received this letter, and seeing that it now included interest, Plaintiff prudently decided to call Capital Management to arrange to pay the lesser amount (the $7,077.66) it had sought six months earlier, but was told it was too late—the Account had been sold.[3] (SUMF ¶ 25.) Plaintiff then wrote CPS requesting "information that links this account to [his] name." (SUMF ¶ 27.) On September 2, 2011, CPS provided Plaintiff with verification of the debt, including the original creditor, original account number, the open date, the charge-off date, and the then-current balance on the Account. (SUMF ¶ 28.)[4]

---

[2] When asked at his deposition what he thought was misleading about this letter, Plaintiff said "it's just misleading seeing that amount [the $10,828] and not knowing where it came from or how it jumped up that high and when asking for more information [referring to his subsequent validation request] getting exactly this same information that I've had in front of me the entire time." (SUMF ¶ 26.)

[3] In his complaint, Plaintiff also alleged that because of the change in the amount of the debt (due to the accrual of interest) and the account number, he did not recognize the debt described in this letter (Am. Compl. ¶ 36). At his deposition, however, he acknowledged that the account number referenced in CPS's letter was the same as the account numbers reflected in the monthly billing statements he had received from BOA. (SUMF ¶ 29.)

[4] Under the FDCPA, if a consumer "requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C § 1692g. Verifying a debt "involves nothing more than the debt collector confirming in writing the amount being demanded is what the

### C. Plaintiff Assumes Bank of America Waived Interest

Plaintiff concedes that BOA never communicated that interest on his Account would cease accruing after charge-off (SUMF ¶ 31), or that subsequent owners of his Account would waive interest between the date of charge-off and the date of purchase (SUMF ¶ 32). In fact, Plaintiff testified that he doesn't know what "charge-off" means (SUMF ¶ 33), he had no idea what would happen to his promise to pay interest on his balance post charge-off (SUMF ¶ 34), and that the only basis for this lawsuit is his "confus[ion] as to how even though Bank of America was the institution that [he] opened up the card how Cavalry is able to trump Bank of America's decision to not charge interest" (SUMF ¶ 35). Plaintiff merely *assumed* that BOA's failure to charge interest meant that it was waiving the accrual of interest on the account. (SUMF ¶ 36.)

### D. No Evidence that BOA Knowingly and Intentionally Waived Interest

In his complaint, Plaintiff attempts to bolster this waiver argument by including a host of irrelevant generalized allegations pertaining to how the banking industry treats charged-off debt and why (Am. Compl. ¶¶ 44-46), and the allegation that "standard form credit card agreements used by banks provide that the terms of the agreement can be changed from time to time, and that changes beneficial to the consumer such as a reduction in or a waiver of interest may be effected immediately and without notice" (Am. Compl. ¶ 43). Yet there is no evidence that BOA actually engaged in any of these supposedly standard practices, and in fact Plaintiff's cardholder agreement contained no such policy concerning the waiver of interest. (SUMF ¶ 37.)

---

creditor is claiming is owed." *Chaudry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). Here, CPS provided Plaintiff with the name of the original creditor, the original account number, the date the account was opened, the date the account was charged-off, and the balance then due.

In the end, after nearly two years of litigation, there is no admissible evidence of any intentional or unequivocal conduct by BOA to waive its undisputed contractual right to accrue interest (or to assign that right), and no reason to think that Plaintiff was excused from paying according to *his* credit card terms—which expressly provide "that [BOA's] failure to exercise any rights under [the card member agreement] will not waive any of our rights in the future." (SUMF ¶ 38.)

## ARGUMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "The initial burden is on the moving party . . . to demonstrate that there is no material question of fact with respect to an essential element of the non-moving party's case." *Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005). If the moving party meets this burden, the non-moving party must submit evidence that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

Here, plaintiff's entire claim hinges on whether he can prove that BOA waived interest post charge-off such that SPV (and hence its assignee CPS) was precluded from collecting it. "The issue of waiver is an appropriate topic for summary judgment because the question of whether facts are sufficient to constitute waiver is a question of law." *Sears,*

6

*Roebuck, & Co. v. Allied Commercial Corp.*, 1993 WL 367084, at *3 (N.D. Ill. Sept. 16, 1993). As this Court previously observed, "neither Simkus, nor CPS, allege that Bank of America expressly waived *its right to charge* interest after charging off Simkus's debt, the issue is whether Bank of America impliedly waived its rights." *Simkus v. Cavalry Portfolio Services, LLC*, 2012 WL 1866542, at *4 (N.D. Ill. May 22, 2012) (emphasis added). Moreover, "[i]mplied waiver is factually specific and dependent upon the conduct, acts or words of the party who is alleged to have waived a right." *Id.*

While it is undisputed that BOA did not seek to collect interest on Plaintiff's account post charge-off, there is no evidence that it gave up *its right to do so*, or its ability to assign that right.

> Waiver is the voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed… It must be proved by the party relying upon it. And if the only proof of intention to waive rests on what a party does or forbears to do, his act or omissions to act should be *so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible.*

*Sweeny v. Butz*, 1993 WL 54585, at *2 (N.D. Ill. Feb. 26, 1993) (Grady, J.) (emphasis in original). Thus, before a party is considered to have waived a right, "a clear and distinct manifestation of such intent must be found." *American National Bank & Trust Co. of Chi. v. K-Mart Corp.*, 717 F.2d 394, 398 (7th Cir. 1983). Furthermore, "[d]elay in the enforcement of a contract, standing alone, does not result in waiver." *Sweeny*, 1993 WL 54585 at *2. In other words, Plaintiff bears the burden of proving that BOA's acts (or omissions to act) are so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of its conduct is possible*.* By this standard, Plaintiff has failed to establish a waiver here.

7

**A. BOA Did Not Waive Interest Post Charge-off, Expressly or Impliedly**

The material facts in this case are few and largely undisputed—Plaintiff admits that he opened a credit card account with BOA that was subsequently sold to SPV. He admits that it was subject to a cardholder agreement wherein he contractually agreed that he would pay a certain amount of interest on the debt he incurred. He even concedes that he is liable to Defendants for interest that has accrued since SPV acquired his debt. Indeed, his entire waiver argument stems from the scant allegations made in his amended complaint, and is limited to two documents: (1) the letter from Capital Management that did not seek to collect post-charge off interest and (2) the TransUnion credit report reflecting a "high balance" that did not include post-charge off interest.[5]

Neither of these actions can be construed as a "clear, unequivocal, and decisive act" by BOA to waive interest. *See e.g., Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 105 (Ill. 1991) (bank did not waive right to accelerate loans by canceling first scheduled sale of collateral securing loans, assisting borrowers relative to the sale of certain collateral and accepting loan payments from borrower); *In re Krueger*, 192 F.3d 733, 740-741 (7th Cir. 1999) (bank did not waive rights under an addendum where no evidence offered to indicate employee accepted payments with intention of waiving bank's right not to release

---

[5] Although in his complaint, Plaintiff alleges that BOA did not send him any billing statements after it charged-off his Account, (Am. Compl. ¶ 31), he does not contend that this conduct evidenced an intention to waive interest. *See* Ex. A, Norman Dec., Ex. 3, Plf.'s Ans. to Def.'s Interrogs, at No. 3 (asking Plaintiff to identify all acts by BOA evidencing an intent to waive post charge-off interest), and at No. 4 (asking Plaintiff to identify all facts, documents and people with knowledge of BOA's alleged waiver of post charge-off interest). This argument would be unavailing in any event. *See Van Slyke v. Capital One Bank*, 2007 WL 2385108 (N.D. Cal. Aug. 17, 2007) (granting creditor's motion to dismiss plaintiff's claim that it had violated TILA where plaintiff alleged that "Capital One has a policy and practice in which it refuses to issue billing statement to accounts which it has 'charged off' as a loss for tax purposes, even though it claims [...] interest and fees continue to accrue on the outstanding balances.")

8

second mortgage). To the contrary, BOA's actions may simply be attributed to its internal charge-off policies. *See Index Futures Group, Inc. v. Schmidt*, 1997 WL 109978 at *6 (N.D. Ill. March 7, 1997)(Coar, J.)(evidence regarding plaintiff's treatment of defendant's debt balance on customer statements can reasonably be explained by plaintiff's internal bookkeeping and tax information reporting practices and was insufficient to find implied waiver of defendant's debt).

To be sure, BOA never communicated to Plaintiff that it intended to waive any interest. And, in fact, the only evidence obtained from BOA regarding any waiver of its rights is Plaintiff's credit agreement which expressly states "that [BOA's] failure to exercise any rights under [the card member agreement] will not waive any of our rights in the future." Thus, BOA's conduct should not be construed as waiver of its or its assigns (Defendants') rights. *See Illinois State Toll Highway Authority v. Gust K. Newberg, Inc.*, 177 Ill. App. 3d 6 (2d Dist. 1988) (no waiver of damages where contract contained express nonwaiver provision); *Transcraft Corp. v. Anna Indus. Dev. Corp.*, 223 Ill. App. 3d 100 (1991) (non-waiver clause still binding though contract breached continuously over twenty years).

**B. Interest can Lawfully Continue to Accrue Post Charge-Off**

Moreover, just because an account has been "charged-off" does not mean that a borrower no longer owes interest on the debt. *New Century Financial Services, Inc. v. Anarah*, 2007 WL 1412112 (N.J. Super. May 15, 2007) ("in our view, the judge properly determined that defendant owed the $3,895.50 due when the account was 'charged off,' plus the interest that had accrued on the account thereafter"); *Unifund CCR Partners v. Urban*, 2005 WL 3624541 (Conn. Super., Dec. 8, 2005) ("no logical reason" to think that notice from creditor reflecting account balance of $0 as a result of charge-off of principal

and interest meant consumer owed nothing; the term charge-off is "simply transferring the account to an unpayable category, and turning the account over for collection"). "Charging off" a debt is simply an accounting entry that prevents the financial institution from overstating its profits by removing the interest on the debt from its income statement and removing the debt itself from the bank's assets. 8 Mertens Law of Fed. Income Tax'n § 30:96. It has no bearing on the accrual of interest itself.

Plaintiff agreed to be charged at a certain interest rate pursuant to his credit agreement and he should not assume that his interest rate would plummet to zero from the time his debt was charged-off until his creditor eventually sold it. Given that it is undisputed that Plaintiff's cardholder agreement authorized interest, that the cardholder agreement did not state that interest would be waived after charge-off, and that the cardholder agreement contained a non-waiver provision in the event that BOA failed to exercise its right to collect interest, there can be nothing false, misleading or deceptive under the FDCPA about CPS's letters to Plaintiff that included post charge-off interest.

## CONCLUSION

Each of Plaintiffs' causes of action depends upon the misguided assertion that the collection of post-charge off interest was unauthorized. Because the record does not evidence any "clear, unequivocal, and decisive act" by BOA to waive post charge-off interest, Plaintiff's Amended Complaint fails as a matter of law. Accordingly, this Court should grant summary judgment in favor of Defendants and against Plaintiff.

Respectfully submitted,

CAVALRY PORTFOLIO SERVICES, LLC and
CAVALRY SPV I, LLC

By: /s Raechelle Delarmente Norman
 One of their Attorneys


Anna-Katrina S. Christakis (ARDC #6242675)
Raechelle Delarmente Norman (ARDC #6292683)
Pilgrim Christakis LLP
53 West Jackson Boulevard, Suite 1515
Chicago, Illinois 60604
Ph. (312) 939-0953
Fax (312) 939-0983

**CERTIFICATE OF SERVICE**

      Raechelle Delarmente Norman, an attorney, certifies that on June 19, 2013, she electronically filed the foregoing **Defendants' Motion for Summary Judgment** with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

| | |
|---|---|
| Daniel A. Edelman<br>Edelman, Combs, Latturner & Goodwin, LLC<br>120 S. LaSalle Street, 18th Floor<br>Chicago, Illinois 60603<br>dedleman@edcombs.com | Francis R. Greene<br>Edelman, Combs, Latturner & Goodwin, LLC<br>120 S. LaSalle Street, 18th Floor<br>Chicago, Illinois 60603<br>fgreene@edcombs.com |
| Cathleen M. Combs<br>Edelman, Combs, Latturner & Goodwin, LLC<br>120 S. LaSalle Street, 18th Floor<br>Chicago, Illinois 60603<br>ccombs@edcombs.com | James O. Latturner<br>Edelman, Combs, Latturner & Goodwin, LLC<br>120 S. LaSalle Street, 18th Floor<br>Chicago, Illinois 60603<br>jlatturner@edcombs.com |

                                              /s/ Raechelle Delarmente Norman