# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JONATHAN SIMKUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 7425 |
| | ) |
| CAVALRY PORTFOLIO SERVICES, LLC and | ) |
| CAVALRY INVESTMENTS, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Jonathan Simkus brings a two-count complaint against Defendants Cavalry SPV I, LLC (SPV), and Cavalry Portfolio Services, LLC (CPS) for violations of § 1692e and § 1692f of the Fair Debt Collections Practices Act. 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Mr. Simkus contends Defendants SPV and CPS (collectively, "Defendants") unlawfully charged him interest retroactively on a debt SPV purchased from Bank of America ("BOA") for the purposes of collection. Defendants contend that BOA never waived its right to collect interest, and therefore, Defendants were permitted to charge that interest as BOA's assignee. Before us are cross-motions for summary judgment as to liability on both counts. For the reasons set forth below, we deny Mr. Simkus's motion. We deny Defendants' motion in part, and grant it in part. We also request additional briefing for the parties to address whether Defendants' dunning letter was misleading.

**BACKGROUND**

Plaintiff Jonathan Simkus accrued $7,077.66 in BOA credit card debt. (Pl.'s 56.1 SOF ¶¶ 11–13.) Mr. Simkus opened the account on July 18, 2003. (*Id.* ¶ 6.) According to the cardholder agreement, the applicable law is Arizona and federal Law. (*Id.*, Ex. D, Cardholder Agreement at 956.) Mr. Simkus testified that from 2003 to 2010, he lived in various locations in Arizona. (*Id.*, Ex. A, Simkus Dep. at 10.) After Mr. Simkus stopped making payments, the account went into default and BOA charged-off the account on April 30, 2009. (*Id.* ¶¶ 11–12.) Mr. Simkus understood that under his agreement with BOA, the bank would charge interest on any unpaid balances. (*Id.* ¶ 10.) Also, he testified that he believed he knew how BOA would calculate this interest. (Defs.' 56.1 SOF, Ex D, Simkus Dep. at 34.) On December 9, 2010, Capital Management Services, L.P, attempted on BOA's behalf to collect the charged-off debt of $7,077.66. (Defs.' 56.1 SOF ¶ 15.)

On May 11, 2011, BOA's subsidiary, FIA Card Services, sold Mr. Simkus's credit card account to SPV, LLC, a debt collection agency. (Pl.'s 56.1 SOF ¶ 18.) That same month, BOA reported to TransUnion that the "High Balance" on the account was $7,077.66. (Defs.' 56.1 SOF ¶ 18.) In the agreement between BOA and SPV, the contract indicated that the balance "may include interest (accrued or unaccrued)." (Pl.'s 56.1 SOF, Ex. K, Loan Sale Agreement § 1.7.) BOA did not charge interest for the twenty-five months after the charge-off prior to its selling the account to Defendant SPV. (Pl.'s 56.1 SOF, Ex. C, Aff. of Sale and Certification of Debt.) In the cardholder agreement between BOA and Mr. Simkus, the agreement states that "failure to exercise any rights . . . will not waive any of our rights in the future." (Pl.'s 56.1 SOF, Ex. D, Cardholder Agreement § 7.17.)

After purchasing the accounts from BOA, SPV then retroactively added interest to the account from the period BOA owned the account after the charge-off date until SPV purchased the

account. (Pl.'s 56.1 SOF ¶ 22.) One month after SPV purchased the account, CPS[1] sent Mr. Simkus a collection letter demanding $10,828.28. (*Id.*, Ex. H.) Mr. Simkus testified that he found the new amount confusing based on the previous statement from Capital Management services that requested the charge-off amount of $7,077.66. (Simkus Dep. at 75–78.) Upon seeing the letter with the new balance, Mr. Simkus testified that his parents were also confused, but they speculated that the extra amount on the balance "was probably interest." (Simkus Dep. at 90:17–18.) On June 29, 2011 Mr. Simkus wrote to CPS, seeking information verifying his name in connection to the account. (Defs.' 56.1 SOF ¶ 29.) On September 2, 2011, CPS provided Mr. Simkus with the verification information on the account and informed him that the balance had increased to $11,220.79. (Pl.'s 56.1 SOF, Ex. J.)

Mr. Simkus argues that Defendants' retroactive charging of interest violates § 1692e and § 1692f of FDCPA. (Pl.'s MSJ at ¶ 5.) Each party seeks summary judgment on liability.

**STANDARD OF REVIEW**

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely

---

[1] Defendant CPS is an affiliated debt collection agency and SPV's assignee. (Defs.' MSJ at 4.) The two companies are under common management and common control. (Pl.'s 56.1 SOF ¶ 8.)

disputed. *Id.*; Fed. R. Civ. P. 56©. In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

Mr. Simkus argues that BOA waived the interest on his credit card debt because it did not charge him interest for the twenty-five month period from the date of charge-off to BOA's selling the debt to SPV. He argues therefore that Defendants' adding retroactive interest and attempting to collect on that debt violated FDCPA § 1692e and § 1692f. Under FDCPA, debt collectors cannot use "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Whether a violation occurs is viewed through an objective standard of the "unsophisticated consumer." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004); *Veach v. Sheeks,* 316 F.3d 690, 692 (7th Cir. 2003). Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." FDCPA also forbids "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligations) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Mr. Simkus's § 1692e and § 1692f arguments in part depend on whether BOA waived interest, we must discuss the appropriate choice of law for determining waiver as a threshold matter. After considering the applicable waiver standard, we will turn to analyze Mr. Simkus's contention that Defendants violated § 1692f(1) because they tried to collect on a debt not authorized by law or contract. Finally, we will address Mr. Simkus's claim that Defendants violated § 1692f(1) and § 1692e, regardless of the issue of waiver, because they failed to explain in their dunning letter how the debt amount had increased.

A.  DID BOA WAIVE ITS RIGHT (AND THUS ITS ASSIGNEE'S RIGHT) TO COLLECT INTEREST?

   1.   **Choice of Law Governing Waiver**

Before deciding whether BOA waived its right to interest, we must decide which state's law to use in interpreting the alleged waiver. Although the parties generally relied on Illinois law in their briefs, the Purchase Agreement between Mr. Simkus and BOA states that "APPLICABLE ARIZONA AND FEDERAL LAW" apply. (Pl.'s 56.1 SOF, Ex. D, Cardholder Agreement at 956.) Under Illinois law, a court will apply a contract's choice-of-law clause to disputes that arise from that contract, so long as the contract is valid. *Kohler v. Leslie Hindman Inc.*, 80 F. 3d 1181, 1185 (7th Cir. 1996); *see also Amakua Dev. LLC v. Warner*, 411 Supp. 2d 941, 948 (N.D. Ill. 2006) ("Under Illinois law, an express choice of law provision in a contract will be given effect provided that (1) it does not contravene a fundamental public policy of Illinois, and (2) the state chosen bears a reasonable relationship to the parties or the transaction."); *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002). "[T]he public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties." *Amakua*, 411 F. Supp. 2d at 948.

Courts generally defer to the parties' designated choice of law provision in the contract. *TEKsystems, Inc. v. Lajiness*, 12 C 10155, 2013 WL 3389062 at *2 (N.D. Ill. July 8, 2013) (applying choice of Maryland law where the parties did not dispute the contract's validity or public policy implications); *LaSalle Bank Nat'l Assoc v. Paramont Props.*, 588 F. Supp. 2d 840, 849 (N.D. Ill. 2008). Illinois precedent teaches that the purpose of the "reasonable relationship" test for the choice of law analysis is "to preclude parties from arbitrarily selecting the laws of some jurisdiction which has no relation to the matter in controversy." *Amakua*, 411 F. Supp. 2d at 951. Consistent with these principles, the district court in *McDonald v. Asset Acceptance LLC* accepted

the contractual choice of law clause as the source of law for deciding whether a waiver of interest had occurred following a creditor's charge-off. 11 C 13080, 2013 WL 4028947, at *9 (E.D. Mich. Aug. 7, 2013).

Here, because waiver involves contract interpretation, we interpret state law. The parties have not contested the validity of the contract, and the agreement expressly provides that applicable Arizona and federal law apply. Like in *TEKsystems*, neither party here has raised a public policy argument for why a specific forum should apply, nor does either party attack the relationship between the forum state and the parties as unreasonable. 2013 WL 3389062 at *2. Mr. Simkus testified that from 2003 to 2010, he lived in various locations in Arizona, the forum state. (Pl.'s 56.1 SOF, Ex. A, Simkus Dep. at 10.) Although the parties have not addressed this subject, we view Mr. Simkus's relationship to the state of Arizona as sufficiently reasonable to justify application of Arizona law. Because the validity of the contract is not at issue, and an issue of state law arises, we will apply Arizona law governing waiver.

### 2. Under Arizona law, a factfinder must decide whether BOA waived its right to collect interest.

Mr. Simkus argues that Defendants violated FDCPA because they tried to retroactively collect interest that BOA had previously waived. A waiver is an intentional relinquishment of a known right. *Yuma Cnty. v. Arizona Edison Co.*, 65 Ariz. 332, 336, 180 P.2d 868, 870 (Ariz. 1947); *City of Glendale v. Coquat*, 46 Ariz. 478, 482, 52 P.2d 1178, 1180 (Ariz. 1935); *see Albert v. Joralemon*, 271 F.2d 236, 240 (9th Cir. 1959) (applying Arizona law). Waiver may be express or implied from conduct. *Concannon v. Yewell*, 16 Ariz. App. 320, 321, 493 P.2d 122, 123 (Ariz. Ct. App. 1972); *see Albert*, 271 F.2d at 240. Therefore, even though a party does not expressly waive a right to collect interest, the lack of an express waiver will not bar a finding of implied waiver. "Doubtful cases will be decided against waiver." *Goglia v. Bodnar*, 156 Ariz. 12, 19, 749

P.2d 921, 928 (Ariz. Ct. App. 1987) (citing *A.J. Bayless Markets, Inc. v. Indus. Comm'n of Ariz.*, 134 Ariz. 243, 245, 655 P.2d 363, 365 (Ariz. Ct. App. 1982)).

A trier of fact's finding of waiver would require a ruling in favor of Mr. Simkus and a finding that Defendants violated FDCPA § 1962e. A finding of waiver also would mean that the rights of an assignee would be "no higher than those of the bank." *In re Nixon*, 400 B.R. 27, 35 (Bankr. E.D. Pa. 2008); *see also In re Sweet,* 369 B.R. 644, 652 (Bankr. D. Colo. 2007) (assignee debt collector "may not retroactively substitute his discretion for that of Servicing in order to apply default interest to the May 2, 2003 letter when Servicing first noted a default in the Note."). Likewise, in *Terech v. First Resolution Mgmt. Corp.*, the debt collectors "undisputedly stepped into the shoes of their respective assignors when they purchased Mr. Terech's debt, taking that debt subject to any existing waivers or defenses." 854 F. Supp. 2d 537, 541 (N.D. Ill. 2012). When a debt collector tries to collect interest that a previous creditor had waived, the debt collector violates § 1692e(2)(A). *McDonald,* 2013 WL 4028947 at *13.

Whether a right has been waived is a question of fact for the trial court. *Goglia*, 156 Ariz. at 19, 749 P.2d at 928; *N. Arizona Gas Serv., Inc. v. Petrolane Transp., Inc*., 145 Ariz. 467, 476, 702 P.2d 696, 705 (Ariz. Ct. App. 1984). "The courts of this state have repeatedly held that waiver may be inferred from conduct and is, therefore, a question of fact to be determined by the trier of fact." *Chaney Bldg. Co., Inc. v. Sunnyside Sch. Dist. No. 12*, 147 Ariz. 270, 273, 709 P.2d 904, 907 (Ariz. Ct. App. 1985); 35B C.J.S. Fed. Civ. P. § 1181 (in contract cases, "issues of fact raised by the pleadings or papers relating to rescission or cancellation, or **waiver**, may preclude the granting of summary judgment") (emphasis added). As a result, a factfinder must determine whether BOA waived its right to collect interest by not charging interest over a twenty-five month period.

Because Mr. Simkus argues that BOA waived its right to collect interest, and pertinent authorities hold that an assignee cannot exercise previously-waived rights, we cannot rule on FDCPA § 1692e and § 1692f claims without knowing whether the BOA waived the right. Consistent with Arizona law, BOA's alleged waiver is a question of fact for trial. We thus deny both motions for summary judgment on these claims.

**B.    EVEN IF BOA WAIVED INTEREST, DID DEFENDANTS VIOLATE § 1692(f)(1) BY ATTEMPTING TO COLLECT AN UNAUTHORIZED DEBT?**

Although the finder of fact will need to decide the issue of waiver, we can dispense with Mr. Simkus's specific § 1692f(1) claim. FDCPA broadly prohibits unfair conduct in debt collection. *Terech,* 854 F. Supp. 2d at 540. In § 1692f, it prohibits the "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692(f). "Unconscionable means" includes collecting any amount not authorized by law or by the original debt agreement. *Terech,* 854 F. Supp. 2d at 540. Here, Mr. Simkus argues that Defendants violated § 1692f(1) because it attempted to collect an unauthorized debt. The statute forbids "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Because Mr. Simkus has not disputed that his original cardholder agreement with BOA allowed the imposition of interest, we grant summary judgment for Defendants on the § 1692f(1) claim.

Courts have construed the statute to apply only to the original agreement creating the debt. In *Terech*, for example, the court held that § 1692f(1) is "directed at debt collectors who charge fees not contemplated by the original agreement, not debt collectors who seek to charge fees contemplated by the agreement but arguably waived thereafter." 854 F. Supp. 2d at 544 (citing *Transamerica Financial SVS, Inc. v. Skyes*, 97 C 2568, 1998 WL 325231, at *3 (N.D. Ill. June 10,

1998)). In *Terech*, the court dismissed the plaintiff's 1692f(1) claim because the original agreement between the credit card company and consumer allowed for interest charges. 854 Supp. 2d at 544.

Similarly here, even if BOA waived its right to collect interest, Defendants cannot have violated 1692f(1) if the original agreement between Mr. Simkus and BOA allowed for charging interest on late payments. As in *Terech*, where the plaintiff did not show that the original agreement between Mr. Terech and U.S. Bank barred interest charges, Mr. Simkus understood that—under his agreement with BOA—the bank would charge interest on any unpaid balances. (Pl.'s Resp. to Defs.' 56.1 SOF ¶ 10.) Mr. Simkus testified that he believed he knew how BOA would compute those charges. (Simkus Dep. at 34.) Mr. Simkus has thus failed to raise a factual question about BOA's right to charge interest under the original agreement. Accordingly, we grant summary judgment on the § 1692f(1) claim in favor of Defendants.

## C. LEGALITY OF THE DUNNING LETTERS

We turn then to Mr. Simkus's final claim and consider whether the dunning letters he received were misleading in violation of § 1692e(2)(A) and § 1692f. To prevail on this claim, Mr. Simkus must show either that the text of the challenged letters "plainly reveal that [they] would be confusing to a significant fraction of the population," or that extrinsic evidence supports the claim of confusion. *See Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 415 (7th Cir. 2005). We evaluate each approach below.

### 1. Defendants' lack of explanation in the dunning letters of the charge increase does not constitute a plain violation of § 1692e(2)(A) or § 1692f.

Mr. Simkus argues that, even if Defendants properly added retroactive interest, they violated FDCPA because CPS failed to explain in its dunning letters how the balance increased by $3,750.62, or about 45%, in a few months. Mr. Simkus contends that CPS should have itemized

the interest so that the new sum would make sense to him. "Courts may determine as a matter of law that a collection letter, on its face, violates the FDCPA" when the letter is plainly misleading. *Acik v. I.C. Sys., Inc.*, 640 F. Supp. 2d 1019, 1023 (N.D. Ill. 2009); *Durkin*, 406 F.3d at 415.

In deciding whether the collection letters violated FDCPA, we look at the letters from the perspective of an unsophisticated consumer. *Fields*, 383 F.3d at 564; *Veach*, 316 F.3d at 692. This view assumes that a consumer is "uninformed, naive, or trusting." *Veach*, 316 F.3d at 693. "However, an unsophisticated consumer possesses 'rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences.'" *Fields*, 383 F.3d at 564 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

Courts have held that debt collectors have an obligation to itemize and explain additional charges in a collection-dunning letter. *Acik*, 640 F. Supp. 2d at 1023; *Fields*, 383 F.3d at 565. In *Fields*, the Seventh Circuit held that, even if the attorney collection fees were properly added to a debt contract, the debt collectors had an obligation to "clearly and fairly communicate information about the amount of the debt to debtors." 383 F.3d at 565 (reversing district court's grant of a motion to dismiss, where dunning letter lacked detail needed to avoid confusion). There, the debt collectors should have itemized how the total amount due was tallied if the demand included added-on expenses, "like attorneys' fees or collection costs." *Id.* The Seventh Circuit found that an unsophisticated consumer might become confused as to the character of the debt, where the letter lumped the original charges and attorneys' collection fees without explanation. *Id.* at 565–66. The court suggested "[o]ne simple way to comply with §§ 1692e and 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt." *Id.*

A court may grant summary judgment in favor of the plaintiff when the collection letter "on its face" clearly violates FDCPA. *Acik.*, 640 F. Supp. 2d at 1023 (citing *Durkin*, 406 F.3d at

415). In *Acik*, the court held that defendant ICS violated § 1692e in failing to disclose what an "Additional Client Charges" fee represented. 640 F. Supp. 2d at 1025. The court asked whether "the fees were 'clearly and fairly communicated' so that Acik could ascertain the fees' validity." *Acik*, 640 F. Supp. 2d at 1025 (quoting *Fields*, 383 F.3d at 565). In *Acik*, a $60 collection fee and $18.50 interest fee were lumped into one category "Additional Client Charges" of $78.50, without itemization of the components within the charges. *Id*. at 1025–26. The *Acik* court concluded that ICS' failure to itemize the charges was confusing—and therefore constituted inadequate notice and disclosure under § 1692e—because an unsophisticated consumer would not know why her bill increased. *Id*. at 1024–25.

Although courts have found that lumping charges without explanation is confusing to the unsophisticated consumer and therefore misleading, courts in this jurisdiction have not held that combining *interest and principal* into one item violates § 1692e. In *Wahl v. Midland Credit Management.*, the court held that it was not confusing to include interest in an item listed as "principal balance," where it included interest from the previous creditor. 556 F.3d 643, 646 (7th Cir. 2009). The court held that this lumping was not misleading because FDCPA does not require debt collectors to provide a breakdown of the principal and interest owed on the consumer's underlying credit card debt. *Id.* at 646–47 (affirming summary judgment in favor of defendant); *Barnes v. Advanced Call Center Techs., LLC*, 493 F.3d 838, 839 (7th Cir. 2007) (granting summary judgment for defendant debt collection agency and holding that a debt collector need not break out principal and interest). Unlike *Acik*, the collector's balance in *Wahl* did not include collection fees. *Wahl*, 556 F.3d at 646; *Acik*, 640 F. Supp. 2d at 1025.

Further, in *Hahn v. Triumph Partnership, LLC*, the court granted summary judgment for the defendant debt collector and found no FDCPA violation for describing an "AMOUNT DUE" that encompassed interest that the previous creditor had added prior to the debt collector

-11-

purchasing the debt. 557 F.3d 755, 756–57 (7th Cir. 2009). Indeed, the *Hahn* court held that it would be acceptable to simply give the debtor a statement lumping together the entire balance due, without itemizing either interest or principal. *Id*. at 757. "[T]he difference between principal and interest is no more important to the Fair Debt Collections Practices Act than the color of the paper that [the creditor] used." *Id.* In short, pursuant to Seventh Circuit precedent, even where a balance includes interest along with principal, the interest need not be itemized separately.

Accordingly, we must deny Mr. Simkus's motion for summary judgment on this theory. Applying the aforementioned authorities to Mr. Simkus's claim, we conclude that CPS was not required to itemize interest and principal. The amount that CPS listed as the outstanding balance as $10,828.28 on June 13, 2011, represented the amount that Mr. Simkus owed on that date if BOA had not waived interest. The parties do not dispute that this outstanding balance consisted of $7,077.66 in principal and $3,750.62 in interest. Because combining interest and principal is permissible, the dunning letter is not confusing "on its face." *Acik.*, 640 F. Supp. 2d at 1023 (citing *Durkin*, 406 F.3d at 415).

### 2. Mr. Simkus has failed to provide any extrinsic evidence demonstrating that the dunning letter was confusing to an objective unsophisticated consumer.

Having concluded that Defendants' letter is not clearly misleading on its face, we turn to address whether Defendants' dunning letter is nonetheless misleading under these circumstances. In cases where the dunning letter does not clearly violate FDCPA on its face, a plaintiff must provide some extrinsic evidence showing that an unsophisticated consumer would be confused to survive a defendant's summary judgment motion. *Smith v. First Nat'l Collection Bureau*, 06 C 4742, 2007 WL 4365335, at *3 (N.D. Ill. Dec. 10, 2007); *Durkin*, 406 F.3d at 415.

"'[M]ere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment

motion.'" *Id.* at *2 (quoting *Durkin*, 406 F.3d at 415). In *Smith*, the debt collector reported the interest as "0" in its demand, even though the principal balance included interest as well as the principal. 2007 WL 4365335, at *3. The court held that, without more, these facts did not support a claim of confusion. The court reasoned that "a plaintiff must allege more than that he or she was confused by a collection letter; the letter must be misleading as judged by an objective standard of the unsophisticated debtor." *Id.* at *4. Because the plaintiff had no such evidence, the court granted summary judgment in favor of the defendant. *Smith*, 2007 WL 4365335 at *2.

Likewise, Mr. Simkus offers no extrinsic evidence detailing how an unsophisticated consumer would find CPS's dunning letter confusing. He merely stated in his deposition that he was confused and that his parents speculated that the additional amount could be the result of interest. (Simkus Dep. at 90:17–18.) Yet despite claiming that he was confused, Mr. Simkus also testified that he believed he knew how BOA would calculate interest. (Simkus Dep. at 34.) Mr. Simkus does not contend that the interest was charged beyond that contractual rate, relying instead on his waiver argument.

Although Defendants requested that we deny summary judgment to Mr. Simkus on this issue (Defs.' Resp. at 10.), they did not independently seek summary judgment. Because resolution of this question may narrow the issues remaining for trial, we ask the parties to brief whether Defendants violated FDCPA for not explaining how the balance increased $3,750.62 in one month after they purchased the debt and sent Mr. Simkus the dunning letter. In accordance with Rule 56(f), we give the parties until February 21, 2014 to file supplemental briefs (not to exceed seven pages) addressing whether Defendants are entitled to summary judgment on Mr. Simkus's claim that their failure to itemize interest violated §§ 1692e(2)(A) and 1692f. If

necessary, the parties may each submit up to ten additional 56.1 Statements of Fact, as long as they directly pertain to this narrow question.

## CONCLUSION

For the reasons set forth above, we grant Defendants' motion for summary judgment with respect to Mr. Simkus's claim under § 1692f(1) that they attempted to collect an unauthorized debt. We deny Defendants' motion as to all other claims. We also deny Plaintiffs' motion for summary judgment. The parties shall submit the supplemental briefing described above no later than February 21, 2014. This case is set for status on April 3, 2014. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 27, 2014