UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN SIMKUS,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>CAVALRY PORTFOLIO SERVICES, LLC and  )<br>CAVALRY INVESTMENTS, LLC,  )<br>)<br>Defendants.  ) | No. 11 C 7425<br>Hon. Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Jonathan Simkus brings a two-count complaint against Defendants Cavalry SPV I, LLC (SPV) and Cavalry Portfolio Services, LLC (CPS) for violations of § 1692e and § 1692f of the Fair Debt Collections Practices Act. 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Mr. Simkus contends that Defendants SPV and CPS (collectively, Defendants) unlawfully charged him interest retroactively on a debt SPV purchased from Bank of America ("BOA") for the purposes of collection. Defendants contend that BOA never waived its right to collect interest, and therefore, Defendants were permitted to charge that interest as BOA's assignee.

The parties filed cross-motions for summary judgment as to liability for both counts. We denied Mr. Simkus's motion. We denied Defendants' motion in part, and granted it in part.[1] We also requested additional briefing from the parties addressing whether Defendants' dunning

---

[1] In our January 27, 2014 order, we dismissed Mr. Simkus's § 1692f(1) claim that Defendants used unconscionable means to collect an unauthorized debt because the original cardholder agreement between BOA and Mr. Simkus allowed imposing interest. (Op. at 8–9.) We denied summary judgment on the issue of whether BOA waived its right to collect interest. That issue will be decided at trial. (*Id.* at 8.)

1

letters were misleading because they failed to explain how the balance increased. (Op. at 13–14.)

The parties have submitted their supplemental briefs, and, for the reasons set forth below, we grant summary judgment in favor of Defendants on the issue of whether the dunning letters were misleading under § 1692e(2)(A) and § 1692f because they did not itemize interest charges.

**BACKGROUND**

Plaintiff Jonathan Simkus accrued $7,077.66 in BOA credit card debt. (Plaintiff's 56.1 Statement of Facts ¶¶ 11–13.)[2] Mr. Simkus opened the account on July 18, 2003. (*Id.* ¶ 6.) After Mr. Simkus lost his job and stopped making payments, the account went into default and BOA charged-off the account on April 30, 2009. (*Id.* ¶¶ 11–12.) Mr. Simkus understood that under his agreement with BOA, the bank would charge interest on any unpaid balances. (*Id.*, Ex. A, Simkus Dep. at 10.) Also, he testified that he believed he knew how BOA would calculate this interest. (Defs.' 56.1 SOF, Ex. D, Simkus Dep. at 34.) On December 9, 2010, Capital Management Services, L.P, attempted on BOA's behalf to collect the charge-off amount of $7,077.66. (Defs.' 56.1 SOF ¶ 15.)

On May 11, 2011, BOA's subsidiary, FIA Card Services, sold Mr. Simkus's credit card account to SPV, a debt collection agency. (Pl.'s 56.1 SOF ¶ 18.) In the agreement between BOA and SPV, the contract said the balance "may include interest (accrued or unaccrued)." (*Id.*, Ex. K, Loan Sale Agreement § 1.7.) BOA did not charge interest for the twenty-five months after the charge-off prior to its selling the account to Defendant SPV. (*Id.*, Ex. C, Aff. of Sale and Certification of Debt.) In the cardholder agreement between BOA and Mr. Simkus, the language provides that: "failure to exercise any rights . . . will not waive any of our rights in the

---

[2] The statements of fact referenced here are from the briefing on the initial motions for summary judgment. Defendants submitted a new statement of facts with their supplemental brief but cited only Mr. Simkus's deposition.

2

future." (*Id.*, Ex. D, Cardholder Agreement § 7.17.) Also in May 2011, BOA reported to TransUnion that the "High Balance" on the account was $7,077.66. (Defs.' 56.1 SOF ¶ 18.)

After purchasing the accounts from BOA, SPV then retroactively added interest to the account from the period BOA owned the account after the charge-off date until SPV purchased the account. (Pl.'s 56.1 SOF ¶ 22.) One month after SPV purchased the account, CPS[3] sent Mr. Simkus a collection letter demanding $10,828.28. (*Id.*, Ex. H.) Mr. Simkus testified that he found the new amount confusing based on the previous statement from Capital Management services that requested the charge-off amount of $7,077.66. (*Id.*, Ex. A, Simkus Dep. at 75–78.) Upon seeing the letter with the new balance, Mr. Simkus testified that his parents were also confused, but they speculated that the extra amount on the balance "was probably interest." (Simkus Dep. at 90:17–18.) On June 29, 2011 Mr. Simkus wrote to CPS, seeking information verifying his name in connection to the account. (Defs.' 56.1 SOF ¶ 29.) On September 2, 2011, CPS provided Mr. Simkus with the verification information on the account and informed him that the balance had increased to $11,220.79.[4] (Pl.'s 56.1 SOF, Ex. J.)

Mr. Simkus argues that Defendants' retroactive charging of interest violates § 1692e and § 1692f of FDCPA. (Pl.'s MSJ ¶ 5.) Each party previously sought summary judgment on liability. In the earlier briefing, Defendants responded to Mr. Simkus's claim that their dunning letters were misleading under FDCPA, but Defendants did not affirmatively seek summary judgment on that issue. (Defs.' Resp. at 9–10.) Following our invitation to brief, Defendants now ask for summary judgment in their favor on the issue of whether their dunning letters were misleading under FDCPA.

---

[3] Defendant CPS is an affiliated debt collection agency and SPV's assignee. (Defs.' MSJ at 4.) The two companies are under common management and common control. (Pl.'s 56.1 SOF ¶ 8.)
[4] Collectively, we refer to the two letters reflecting balances of $10,828.28 and $11,220.79 as "the dunning letters."

**STANDARD OF REVIEW**

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255, 106 S. Ct. 2505.

**ANALYSIS**

The sole issue before us is whether Defendants are entitled to summary judgment on Mr. Simkus's claim that the dunning letters Defendants sent him were misleading in violation of § 1692e(2)(a) and § 1692f. Defendants contend in their supplemental brief that they are entitled to summary judgment because the letters do not violate FDCPA on its face, and because "Defendants' letter is not confusing to the unsophisticated consumer." (Defs.' Mem. at 4.)

To prevail on the claim at trial, Mr. Simkus must show either that the text of the challenged letters "plainly reveal that [they] would be confusing to a significant fraction of the population," or that extrinsic evidence supports the claim of confusion. (Op. at 9.) *Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 415 (7th Cir. 2005). Mr. Simkus claims in his supplemental brief that Defendants' letters were misleading as a matter of law, but we previously

4

rejected that argument. (Op. at 12.) As explained in our January 27 opinion, the dunning letters cannot be facially confusing because combining interest and principal is permissible. (*Id.* (citing *Acik v. I.C. Sys., Inc.*, 640 F. Supp. 2d 1019, 1023 (N.D. Ill. 2009)).) For the reasons discussed in the Opinion, Defendants' lack of explanation about the charge increase in the dunning letters does not constitute a plain language violation. (Op. at 9–12.)

Having concluded that the letters were not plainly misleading, we now consider whether Mr. Simkus has offered extrinsic evidence sufficient to raise a question of fact for a jury. To survive a defendant's summary judgment motion in cases where a dunning letter is not clearly false, as here, a plaintiff must provide some extrinsic evidence showing that an unsophisticated consumer would be confused. *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 945 (7th Cir. 2011); *Durkin*, 406 F.3d at 415; *Smith v. First Nat'l Collection Bureau*, 06 C 4742, 2007 WL 4365335, at *3 (N.D. Ill. Dec. 10, 2007); *see also Williams v. OSI Educ. Servs., Inc*, 505 F.3d 675, 678 (7th Cir. 2007) (stating that "absent a showing that the face of the letter will precipitate such a level of confusion, the plaintiff must come forward with evidence beyond the letter and beyond [her] own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial").

"'[M]ere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion.'" *Smith*, 2007 WL 4365335, at *2 (quoting *Durkin*, 406 F.3d at 415). In *Smith*, a collection letter reporting interest as "0" was not confusing, even though the represented principal balance included interest as well as the principal. 2007 WL 4365335, at *3–4. There, the reported balance had accrued interest prior to the bank's charge-off of the account. *Id.* at *1. The court reasoned that "a plaintiff must allege more than that he or she was confused by a

5

collection letter; the letter must be misleading as judged by an objective standard of the unsophisticated debtor." *Id.* at *4. The court required the plaintiff to "'come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial.'" *Id.* at *2 (quoting *Durkin*, 406 F.3d at 415). Because the plaintiff had no such evidence, the *Smith* court granted summary judgment in favor of the defendant. *Smith*, 2007 WL 4365335, at *4.

Here, because Mr. Simkus offers no extrinsic evidence detailing how an unsophisticated consumer would find CPS's dunning letters confusing, we are compelled to agree with Defendants that there is no triable issue of material fact. Despite claiming that he was confused, Mr. Simkus testified that he believed he knew how BOA would calculate interest. (Simkus Dep. at 34.)

Although Mr. Simkus cites to *Muha v. Encore Receivable Mgmt., Inc.*, his reliance is misplaced. 558 F.3d 623, 628 (7th Cir. 2009). The dispute in *Muha* did not involve the itemization of interest and principal. Rather, the dispute stemmed from the defendant's representation to the class members that their original cardholder agreement had been "revoked," which could "have suggested to an unsophisticated consumer that any right he might have to challenge the demand for payment had been extinguished by the revocation of his contract with the issuer, the original creditor." *Id.* at 629. In that case, the plaintiffs survived summary judgment because they could potentially show that they were representative of an unsophisticated consumer. Indeed, the plaintiffs in *Muha* represented a class involving 7,000 victims. *Id.* at 625.

Here, we have a single plaintiff: Mr. Simkus, who alleges his own confusion, based on his own testimony.[5] He presents no extrinsic evidence that any other consumers were or could have been confused by Defendants' letters. Although Mr. Simkus testified that his parents were confused, he also recalled that they thought the increased balance likely was from interest. (Simkus Dep. at 90:17–18.) Unlike the plaintiffs in *Muha*, who theoretically could rely on testimony from the class to support their claims, he cannot show that the letter was objectively misleading to the unsophisticated debtor. 558 F.3d at 628 (noting that, although plaintiffs' survey evidence was inadmissible, the recipients of the challenged letter could testify at trial that they were misled). With his testimony alone, and no other evidence, Mr. Simkus does not establish that his alleged confusion represents the unsophisticated consumer.

## CONCLUSION

For the reasons above, we grant Defendants' supplemental motion for partial summary judgment (Dkt. No. 133) with respect to Mr. Simkus's claim that the debt collection letters were misleading under § 1692e(2)(A) and § 1692f for failing to itemize interest and principal separately.

We previously granted summary judgment in favor of Defendants on Mr. Simkus's § 1692f(1) claim that Defendants used unconscionable means to collect an unauthorized debt because the original cardholder agreement between BOA and Mr. Simkus allowed imposing interest. (Op. at 8–9.)

---

[5] Although Mr. Simkus initially pursued a class action, he withdrew his class allegations more than a year ago. (Dkt. Nos. 99, 101.)

Remaining for trial is the issue of whether Defendants violated § 1692e(2)(A) and § 1692f by attempting to collect an unauthorized and waived debt, as discussed in the Opinion. (Op. at 5–8.)

The parties shall appear for a status hearing on May 15, 2014 at 10:30 a.m. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: May 5, 2014